On a prior appeal of this malpractice suit, we reversed an order granting summary judgment in favor of the defendants. We held that whether an attorney-client relationship existed between the plaintiff and defendants and, if so, whether the defendants breached their duty to use reasonable care and skill under the facts alleged were questions of fact for the jury to decide. Herston v. Whitesell, 348 So.2d 1054 (Ala. 1977).
On remand, the trial court granted motions for directed verdicts in favor of each defendant at the close of the plaintiff's case. The plaintiff again appealed as to defendants Whitesell and Gallion, but dismissed his case against co-defendant Dozier. On his appeal, the plaintiff contends that the trial court erred in directing a verdict in favor of the defendants. The question presented is whether the plaintiff adduced evidence sufficient to make a jury question on any theory of liability presented. As stated on the prior appeal:
 "The elements of an action against an attorney in his professional capacity for negligence are essentially no different from those of any other negligence suit. To recover, the appellant must prove a duty, a breach of the duty, that the breach was the proximate cause of the injury, and damages. . . .
. . .
 "As to proximate cause, the appellant contends that as a result of the appellees' negligence he lost a valid claim against the City of Troy. Two legal questions arise at this point: (1) Could the appellant have stated a cause of action against the City? If he could not have, then any negligence of the appellees could not have proximately caused the loss of appellant's claim (and for that matter, the *Page 269 
advice that he had no claim, assuming it was given, would have been correct). . . ." (348 So.2d at 1057 and 1058)
The defendants contend that the court correctly granted their motions for directed verdicts because they say the plaintiff's evidence "proves conclusively that the plaintiff had no recoverable claim against the City of Troy." The plaintiff acknowledges that he has the burden of proof to present a jury question as to whether he lost a valid claim against the City of Troy as a consequence of the defendants' breach of duty to him as a client. The issue then is whether the plaintiff offered any evidence which would support a verdict against the City of Troy. The defendants conclude that the plaintiff's evidence was sufficient for submission to the jury on all the other elements he was required to prove. We agree with the defendants that the dispositive issue on this appeal is whether the evidence presented by the plaintiff was sufficient to withstand a motion for directed verdict on the personal injury claim, treating the same as if it were offered in a suit against the City of Troy. We hold that it was and reverse.
On the prior appeal, the following facts were presented by the complaint and affidavits of the parties:
 "On April 2, 1974, appellant Herston fell while painting the interior of the City of Troy's water tower. The appellant or his firm, Horizon Paint Contractors, had contracted with the City of Troy for the performance of the work. Inside the water tank, according to the appellant's complaint, there are about 30 metal rods which radiate from the center of the water tower to the walls of the water tower. The rods are held together in the center by a `pie plate' or `disc.' Nuts, screwed onto the ends of the rods, attach the rods to the pie plate. Any given rod would rest on the pie plate in its hole without being secured by a nut, but if adequate weight were placed on a rod it would pull loose from the pie plate. Several of the employees of Horizon Paint noticed that some of the nuts were missing. The day after work began, notice of the missing nuts was given to the employees or agents of the City of Troy. Melvin McLendon, Supervisor for the Water Department of the City of Troy, indicated that the rods would be fixed immediately. An employee of the City brought some nuts out to the site but made no effort to put the nuts on the rods, so Horizon Paint employees put on the nuts that were made available at that time. Over the next six weeks employees of Horizon Paint continued to ask Melvin McLendon as well as James Ray, Mayor of the City, and other City employees for nuts to attach to the remaining rods. Upon each request the City assured them that it would immediately provide the nuts and fix the rods.
 "Upon completion of painting the outside and the inside of the tower, with the exception of the `crown' of the tower, appellant Herston entered the tank to complete the job. He placed a 20 foot long board on several rods. He was midway on the board when the rods pulled out and appellant fell about 35 feet to the bottom of the tank." (348 So.2d at 1055)
The evidence establishes that after he was informed that the rods had no nuts, Troy's Supervisor for the Water Department, Mr. McLendon, indicated that they would be fixed immediately and, several days later, brought thirteen nuts to the job site. Herston and his workmen placed these nuts on thirteen of the thirty-two rods. Sandblasting and painting continued for some six weeks; and McLendon continued to assure Herston daily that additional nuts would be provided but were presently unavailable. During this time, Herston's workmen sandblasted and painted the entire outside of the water tower and so much of the inside of the water tank as could be reached without standing on the spider bar assembly.
On April 2, 1974, three of Herston's workmen sandblasted the dome of the water tank by standing on a metal board resting on the spider bar assembly. Later that day, Herston began painting the dome, also using the spider bars as a perch from which to *Page 270 
work. As he moved the metal board, at least one, if not more, of the rods came loose from the pie plate and Herston fell approximately thirty-five feet to the bottom of the tank.
It is true as a general rule that:
 "`The owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of. . . .'" Chrysler Corp. v. Wells, 358 So.2d 426, 428 (Ala. 1978).
See also: Hughes v. Hughes, 367 So.2d 1384 (Ala. 1979); Veal v.Phillips, 285 Ala. 655, 235 So.2d 799 (1970).
It is equally true that one may voluntarily undertake a duty beyond that which the law imposes. United States Fid. Guar.Co. v. Jones, 356 So.2d 596, 598 (Ala. 1977), held that ". . . one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care. . . ." See also: Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971); Macke v. Sutterer, 224 Ala. 681,141 So. 651 (1932); H.H. Parker Bros. v. Hodgson, 172 Ala. 632,55 So. 818 (1911).
The record shows that Mr. McLendon undertook to obtain and supply the missing nuts. He brought some nuts to the job site; and, although they were initially intended for another purpose, they fit the spider bars and were used to secure part of them. After the installation of those thirteen, the rods supported three men who sandblasted the dome of the tank before Herston followed and the rods gave way. The evidence shows that there was no way other than use of the spider bars to do the job contracted for — that is, sandblasting and painting the water tank. Although it is meager, we believe there is evidence from which a jury could conclude that the City of Troy undertook to obtain sufficient nuts to secure the rods for the purpose of supporting the workmen in the performance of their job and breached that duty in supplying too few.
Hughes v. Hughes, supra, does not dictate a contrary result. In that case, plaintiff, an employee of an independent contractor, argued that the owner's workmen's compensation carrier had assumed a duty to maintain the premises in safe condition by agreeing to inspect the premises monthly and report any safety hazards. While recognizing that one may undertake a duty beyond that required by law, the court held that "The duty . . . [the insurance carrier] undertook was to inspect and report. There is no evidence that . . [it] ever had or undertook a duty to correct the safety hazards which it discovered." (367 So.2d at 1387) Whether a jury would be convinced that this was the proximate cause of the plaintiff's injury is not the test. In a directed verdict case, our function is to view the evidence most favorable to the non-moving party; and if, by any interpretation, it can support any inference supportive of a conclusion in favor of the non-moving party, we must reverse. This is true because, under our system, the jury must be allowed to pass on the evidence if any, no matter how slight, is offered which, if believed, would support a verdict in favor of the party against whom a directed verdict is sought. This, we believe, is such a case.
The defendants, in addition to their contentions that the City of Troy breached no duty to the plaintiff, also argue that even if it did, that the evidence establishes, as a matter of law, that Herston was guilty of contributory negligence.
Had this case been submitted to the jury and a verdict rendered in favor of the City of Troy, we would affirm. There is evidence from which a jury could conclude that Herston either assumed the risk or was guilty of contributory negligence. However, that is not the posture of the case before us. True, Herston knew of the defective condition of the spider bars and he was knowledgeable about water tanks, probably more so than the City of Troy. But, unless reasonable men could not differ, it is for the jury to consider, on the issue of contributory negligence, their appreciation of the danger, the voluntariness of their *Page 271 
encounter with it, their use of due care and the reasonableness of their conduct under the circumstances. United States Fid. Guar. Co. v. Jones, supra; Beloit Corp. v. Harrell,339 So.2d 992 (Ala. 1976); Alabama Power Co. v. Mosley, 294 Ala. 394,318 So.2d 260 (1975). We cannot say, as a matter of law, that Herston was contributorily negligent and is, therefore, barred from recovery. See Baptist Medical Center v. Byars, 289 Ala. 713, 271 So.2d 847 (1972); Southern Railway Co. v. Carter,276 Ala. 218, 160 So.2d 628 (1963).
We conclude that the trial court erred in directing verdicts in favor of the defendants, viewing the evidence as if it had been presented in a personal injury suit against the City of Troy.
The judgment appealed from is reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.