ALMON, Justice.
This is an ejectment action in which a suggestion of adverse possession was interposed as a counterclaim. The defendant appeals from the granting of plaintiffs directed verdict on the ownership issue and the judgment entered on a jury verdict which awarded the plaintiff money damages.
This controversy concerns the ownership of approximately forty acres of realty in Etowah County, Alabama. Both the plaintiff Harvey Croft and the defendant Archie Wells derive their respective claims to this tract of land from its former record title holder, the late Willie Patterson.
The following facts are uncontroverted: 1) on several occasions, Patterson expressed an intent to sell this property; 2) in 1973 Archie Wells and his family moved onto a portion of this realty and remained in possession thereof until the present; 3) at this time, several other groups, including the Laura White Prayer Band, were in possession of other portions of this realty; 4) Wells and his family were not affiliated with the Laura White group, which, in a separate lawsuit, was ejected from the realty and ordered to pay to the estate of Patterson the reasonable rental value for its use of the property; 5) with Patterson’s knowledge, Wells placed cows on the land, grew crops, cleared a living area upon which he permanently attached two mobile homes, installed a septic tank and a butane tank on the property, ran water lines on the premises, sold timber off the property, and buried his son on the property; 6) during this period, Wells never paid any money to Patterson for the purchase of the property or his use thereof; 7) during this period, ad valorem taxes were assessed in the names of Patterson and John Croft, Harvey’s father, who was the sole lineal descendant of Patterson; and 8) Harvey Croft paid these ad valorem taxes each year.
The ownership issue is, however, controverted. Wells claims that his possession of the property results from an oral agreement which he and Patterson made in 1973 whereby Patterson would sell the tract to Wells for a consideration of $6,000. This parol contract required that Wells take immediate possession of the land to make it “livable,” and then, once this condition was satisfied, Wells would pay Patterson $100.00 per month at 6% interest until the $6,000 was paid in full. Wells’s mother testified that she tendered the earnest, money to Patterson and offered to prepay the cost of the deed and abstract; Patterson, however, she said, declined the payments at that time because he had been unable to procure the deed and abstract due to illness. After Patterson’s death, Mrs. Wells claimed that she tendered the full purchase price to Patterson’s executor, who refused the tender.
Harvey Croft, on the other hand, claims to be the owner of record based upon the following transactions: Harvey contends that his father, John Croft, inherited the property from Patterson as his sole lineal heir and then deeded the land to Harvey while reserving a life estate. This deed was not recorded until October 5, 1978.
In August 1977, John Croft, as administrator of Patterson’s estate, filed an affidavit and writ of possession in the DeKalb District Court, seeking to oust Wells from the land. The DeKalb District Court, which lacked subject matter jurisdiction, transferred the case to the Etowah District Court, which granted a judgment in favor of John Croft. Wells then filed a notice of appeal to the Etowah Circuit Court, and the action was sent to circuit court for a jury trial de novo on November 28, 1977.
After numerous pleadings, the death of John Croft, and the intervention of Croft’s son Harvey as a party plaintiff, Wells filed a suggestion of adverse possession in accordance with Code 1975, § 6-6-286. In this document, Wells alleged that because he had been in open, notorious and hostile possession of the realty for more than three years prior to the initiation of this action, he was at a minimum entitled to the reasonable value of his permanent improvements to the land.
*52 The case was tried before a jury. At the close of all the evidence, the trial court granted Harvey Croft a directed verdict on the ownership issue. The court then submitted the question of damages to the jury, which returned a general verdict in favor of Croft in the amount of $10,600.
Wells filed a motion for judgment notwithstanding the verdict and alternatively, for a new trial, which was overruled. The trial court then granted Wells's request for reconsideration, and after a hearing, again denied Wells’s postjudgment motions. Wells then filed a notice of appeal to this Court.
The issues presented for review are 1) whether the trial court committed reversible error in granting a directed verdict in favor of Croft on the issue of ownership where Wells claimed title to the property under Code 1975, § 8 — 9—2(5); and 2) whether the jury verdict, which failed to compensate Wells for his permanent improvements to the property in accordance with Code 1975, § 6-6-286, was against the weight and preponderance of the evidence.
Wells contends that the determination of whether Croft owned the property by virtue of a deed or whether Wells owned the property by virtue of an oral contract to purchase this land which fully complied with Code 1975, § 8 — 9—2(5), was properly a matter for the jury as the trier of facts. Wells also argues that the grant of a directed verdict on this issue unduly prejudiced the jury in its subsequent consideration of damages under Code 1975, § 6-6-286. We agree.
The issue of ownership of the land was clearly in dispute. Although Croft introduced a deed to the property, which he had recorded in 1978, Wells offered testimony as to the existence of an oral contract to purchase the land, which was entered into in 1973 and which satisfied the requirements of the exception in Code 1975, § 8 — 9—2(5). This exception to the Statute of Frauds provides that a contract for the sale of lands, tenements or hereditaments, or of any interest therein, need not be in writing and subscribed by the party to be charged therewith if “the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller.”
Wells’s testimony as to the existence of an oral contract to purchase the land, his construction of permanent improvements on the land, and his possession of the land with Patterson’s knowledge was sufficient to establish a prima facie case of a contract outside the Statute of Frauds. See Irvin v. Irvin, 207 Ala. 493, 93 So. 517 (1922) (vendee’s possession of land with vendor’s knowledge and vendee’s construction of improvements as required by vendor sufficient to remove parol contract from Statute of Frauds). The question of possession, moreover, is one properly determined by the trier of facts. Hill v. Cape Coral Bank, 402 So.2d 945, 947 (Ala.1981).
Because the evidence proffered by Wells, if believed by the jury, would have supported a verdict in favor of Wells, it was error for the trial court to direct a verdict in favor of Croft on this issue. See Herston v. Whitesell, 374 So.2d 267, 270 (Ala.1979).
Because we find error in the trial court’s refusal to submit the ownership issue to the jury, we must necessarily reverse the judgment, including that aspect of it awarding money damages.
The judgment is reversed and the cause remanded for a new trial on the issues of ownership and damages under the three-year adverse possession statute.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, EM-BRY and ADAMS, JJ., concur.