KENNEDY, Justice.
This is an appeal by the plaintiff, Floyd Spradlin, from a judgment based on a directed verdict in favor of the defendant, Drummond Company, Inc. (“Drummond”). We reverse and remand.
This action resulted from an accident that occurred on January 15, 1986, at Drummond’s Beltona Strip Pit in northern Jefferson County. At the time of the accident, Spradlin was employed as a truck driver for Busby Trucking Company, an independent contractor retained by Drum-mond to haul coal from the Beltona mine. Spradlin alleged that he sustained injuries when his 18-wheel coal truck was being loaded with coal by Jerry Carroll, a Drum-mond employee.
Carroll was operating an International 560 Hough rubber-tired front-end loader. He had four months’ experience on this machine and had operated a comparable Caterpillar loader for approximately a year. Spradlin claims that when Carroll dumped the first bucketful of coal into his trailer, the truck rocked back and forth so severely that he was thrown from the driver’s seat onto the floorboard of his cab and that he thereby sustained injuries. Carroll concedes that when he finished loading the coal, Spradlin stepped out of his truck and told him: “J.C. ... when you put the first bucket on me, it was like a bolt of lightning went up my spine.” But Carroll denies that there was anything different about the load in question from any other load he made that day or on previous days.
When Spradlin left the pit with the load of coal, he drove a short way and then stopped his truck because, he said, he was in pain. He called his supervisor on his CB radio, and the supervisor picked him up. Spradlin’s family doctor diagnosed him as having a fractured vertebra, and two weeks later he had back surgery. In August 1986, he had further surgery, in which a disk was removed from his spine.
Spradlin sued Drummond, alleging that Carroll had negligently and wantonly operated the loader so as to cause him injury. At trial, Spradlin sought to prove that Carroll failed to dump the bucketful of coal directly in the center of his trailer, but rather dumped it off to one side, causing the truck to rock violently. Spradlin attempted to show that Carroll’s technique for loading the coal was not satisfactory to make the load pour into the center of the trailer. Drummond moved for directed verdict as to Spradlin's claims, on the grounds that he had failed to produce any evidence that Carroll’s loading procedure violated a standard of reasonable care for loading a coal truck, and that he had produced no evidence of wantonness. The court granted Drummond’s motion, stating that Spradlin did not prove a standard of reasonableness or show a violation of reasonableness and that there was no evidence of wanton misconduct on the part of the defendant.
On appeal, Spradlin challenges the directed verdict on his negligence claim. His brief does not specifically address the wantonness claim, and that claim therefore is not at issue in this appeal. Spradlin argues that Carroll’s own testimony as to his load *1004 ing procedure, along with the testimony of an expert witness, constitutes sufficient evidence that Carroll breached his duty of reasonable care in loading the truck. Carroll testified as follows regarding the procedure that he used to load Spradlin’s truck:
“Q. ... Now tell the ladies and gentlemen of the jury just exactly what you did to dump the first bucket into Floyd’s truck?
“A. Just what I did there. I was setting with my bucket in the air and Floyd backed under it. And I eased the dump lever forward and dumped the bucket. I did not have to pick the bucket up, I did not move the loader.
“Q. That’s about what you told us in your deposition, right?
“A. I think it was.
“Q. You had your bucket up in the air and you tilted the bucket forward?
“A. Yes, sir.
“Q. With the bucket lever?
“A. Yes, sir.”
Spradlin also offered the testimony of an expert witness, Reggie Stanford, to show that Carroll’s loading procedure was not reasonable under the circumstances. Stanford had loaded coal for three years for Drummond, using an International 560 Hough loader, and for approximately three years for Cupps Coal Company, using a similar Caterpillar loader. Stanford testified as follows regarding his technique for loading a coal truck:
“Q. ... Can you give us, Reggie, a step-by-step procedure as to how you empty a bucket, first off, a bucket of clean coal into a truck? Just step-by-step, what do you do inside your loader to do it?
“A. Well, if you — are you saying your truck is already set up to load?
“Q. Yeah, the truck is already set up.
“A. All right_ When you get where your bucket is going to dump in enough for the edge to clear the edge of the trailer and lower the boom a little bit right down on top; and then start your bucket over so your coal will start pouring out in the center of that truck. And as the bucket comes over, you’ll knuckle the hoist back in. The hoist is coming up, the bucket is going over, and the machine is rolling forward because your bucket is coming back toward your machine. He has to roll forward to keep that material pouring into the center of that trailer. If you stop, it’s all going to go to one side or the other....”
Stanford testified, further, that the object of his loading procedure is to dump the coal as close as possible in the center of the trailer bed:
“Q. Once you find the middle of the truck and you start tipping the bucket in, does the lip of the bucket, where the edge is, will it always stay over the center once you’ve found it?
“A. Uh-huh (yes), that’s where you get your procedure of bringing your hoist up and your machine rolling forward. Like as your bucket dumps, it proceeds back toward the machine. Do you follow me? And as it proceeds back towards the machine, if your dump rolls forwards, it will come all the way back and hit the side of your trailer.”
Spradlin points out that Stanford testified as follows when he was asked his opinion of loading the coal by tipping the bucket without raising the hoist and rolling the loader forward:
“Q. If the evidence in this case were that Mr. Carroll here, the front end loader-operator for the Drummond Company, was loading Black Creek coal, it was dirty coal with mud and water and gravel in it, and it was just the first dump into the truck, and he dumped it as I described it there with the air brake on and by just letting the bucket curl down, would you have an opinion as to what effect that would have on the truck?
“A. Yes sir, I would.
“Q. All right. What would that do to the truck?
[[Image here]]
“A. If it was wet, heavy material or if he was up that high and made his dump, like I said, the bottom of that *1005 bucket is as wide as that trailer is, and he completed that dump without hitting the inside of that trailer next to him ... his material went to the far side of that trailer. And fasten your seat belt because you’re going to get a ride. When the weight hits off center on the outside of that trailer, it’s going to go away from you. It’s going to roll that truck over.”
Spradlin also argues that a videotape shown to the jury by Drummond constitutes sufficient evidence of the standard of reasonable care for loading a coal truck. The videotape apparently depicted an operator using a 560 Hough front end loader to load coal into a truck, employing a procedure similar to that described by Spradlin’s expert witness. Spradlin contends that this videotape supplemented the expert’s testimony as to the standard of care.
Drummond responds by arguing that this Court cannot consider the videotape in reaching its decision because it was not introduced into evidence, and made a part of the record on appeal. Drummond argues further that the testimony of Stanford, Spradlin’s expert, does not constitute sufficient evidence for the jury to find that Carroll’s procedure for loading Spradlin’s truck was a breach of reasonable care. The defendant maintains that when it cross-examined Stanford, he conceded that the loading procedure is at the discretion of each individual operator. Stanford testified as follows:
“Q. All right. And if he did it in two feet, that’s wrong, he has to bring it down to two inches?
“A. No. I ain’t saying that. That’s entirely up to the loader operator. That’s what I would do.
“Q. Yes, sir.
“A. What Mr. Carroll done, I have no idea.
“Q. All right. If Mr. Carroll decided to do it at this level here ... because these sides are aluminum?
“A. That’s his option.”
Drummond also directed our attention to the following testimony of Stanford on cross-examination:
“Q. Two feet, you say, is not the way you would do it?
“A. Not the way I would do it.
“Q. If Mr. Carroll decided to do it that way, you say that’s just his way of doing it, but you’re not necessarily going to say that’s right or wrong?
“A. No, sir, everybody does things different.
[[Image here]]
“Q. Yes, sir. What are some other ways that you have seen people load coal? You said everybody does it differently?
“A. Everybody does it different. Anybody that drives an automobile does it different. Everybody does everything different. You can take two of the best truck drivers in the world or two of the best over-the-road operators in the world and they do it differently.”
We agree with Drummond that the videotape described by Spradlin in his brief is not before this Court. Because it was not introduced into evidence and was not made a part of the record on appeal, this Court may not consider Spradlin’s description of it as evidence of the standard of care for loading coal. Williams v. Barrington Ford, 402 So.2d 903 (Ala.1981) (plaintiff argued that certain records of the Alabama State Department of Revenue showed that defendant did business in this State and therefore was subject to its in personam jurisdiction, but this Court held that the documents could not be considered on appeal because they were not made a part of the trial record, 402 So.2d at 904).
Notwithstanding that the videotape is not before this Court, we find that Spradlin has produced sufficient evidence of the standard of reasonable care in loading coal, and of a possible breach thereof, for his case to go to the jury. In Herston v. Whitesell, 374 So.2d 267, 270 (Ala.1979), we held:
“In a directed verdict case, our function is to view the evidence most favorable to the non-moving party; and if, by any interpretation, it can support any inference supportive of a conclusion in favor *1006 of the non-moving party, we must reverse. This is true because, under our system, the jury must be allowed to pass on the evidence if any, no matter how slight, is offered which, if believed, would support a verdict in favor of the party against whom a directed verdict is sought.”
We stated in Waddell v. Jordan, 293 Ala. 256, 257, 302 So.2d 74 (1974):
“The rule of our cases is that a case must go to the jury if there is a scintilla of evidence for the plaintiff. Moreover, on appeal from a directed verdict for defendants, the evidence must be viewed in the light most favorable to the plaintiff, and we must allow all inferences favorable to plaintiff which the evidence, or a scintilla of the evidence, supports.”
In this case, Spradlin was a business invitee of Drummond, and Drummond owed him the duty not to injure him negligently, willfully, or wantonly. Elba Wood Products, Inc. v. Brackin, 356 So.2d 119, 122 (Ala.1978). We hold that Spradlin’s evidence that his injury is attributable to negligence on Carroll’s part is sufficient to overcome Drummond’s motion for directed verdict. Spradlin produced evidence that the bucketful of coal that allegedly caused his injury weighed approximately 20,000 pounds, and that his truck weighed 32,000 pounds empty. He showed that the coal being loaded when he was injured was dirty Black Creek coal, which tends to be wet and massed in a lump, rather than fine and powdery. The facts presented a jury question as to whether Carroll’s loading procedure was reasonable or unreasonable under the circumstances. The fact that Drummond elicited from Stanford on cross-examination that every operator loads coal “differently” is not fatal to Spradlin’s case. Stanford’s statement on cross-examination that “everybody does it different” does not negate the inference that the technique he described may have been more reasonable under the circumstances than the procedure employed by Carroll. Whether Carroll’s conduct constitutes negligence is for the jury to decide.
Drummond also argues that the directed verdict was proper because, it says, Sprad-lin failed to offer proof of every allegation in the complaint. Spradlin’s complaint alleges in pertinent part:
“The loader operator, one Jerry Carroll, an employee of defendant corporation, negligently and wantonly operated his front end loader so as to slam into plaintiff’s truck in such a violent manner as to cause plaintiff’s truck to violently rock from side to side causing plaintiff to be tossed about inside the cab of the truck, thus injuring him.”
Drummond argues that Spradlin failed to offer any evidence that Carroll’s loader slammed into his truck, and that this was an essential element of the plaintiff's claim. Drummond contends that since Spradlin attempted neither to prove this allegation nor to amend the complaint to omit it, the directed verdict was proper.
The allegation that Carroll slammed the loader into Spradlin’s truck was not an essential element of the negligence action. We have already noted that a jury could find that Carroll’s procedure for dumping the bucketful of coal into Spradlin’s trailer was not a reasonable means of loading the coal in the center of the trailer. This Court has noted:
“ ‘We have a long line of cases which have established the rule that ‘where a single count contains several distinct, independent averments, each presenting a substantive cause of action, proof of either cause of action, so averred, will authorize a recovery; but where a count contains several averments, all of which, combined together, make up the averment of but one cause of action, it is necessary to prove each of the averments in order to sustain the cause of action as laid.’ ”
Mutual Benefit Health & Accident Ass’n of Omaha v. Bullard, 270 Ala. 558, 569, 120 So.2d 714, 725 (1960) (quoting Mazer v. Brown, 259 Ala. 449, 454, 66 So.2d 561, 566 (1953)). In Bullard, the plaintiff alleged in his complaint that he was injured on the job on September 24, 1953, and on October 20, 1953. The insurer appealed from a judgment for the plaintiff, arguing, inter alia, that the trial judge erroneously failed to *1007 instruct the jury to return a verdict for the insurer if the evidence showed that the plaintiff suffered an accidental injury on only one of the days alleged. This Court held that the defendant had notice that the plaintiff “did not assume the burden of proving both injuries, but only sufficient of them to support the general averment that he had sustained loss of time resulting from accidental injury occurring as specified in the policy.” Bullard, 270 Ala. at 570, 120 So.2d at 726. Similarly, in this case, Drummond had notice that Spradlin would attempt to prove negligence and wantonness on Carroll's part either in slamming the loader into the truck or in dumping the coal into the trailer improperly. Because Spradlin produced evidence that Carroll’s procedure for loading the coal arguably was not reasonable under the circumstances, the judgment based on the directed verdict in favor of Drummond on the negligence claims is due to be, and it hereby is, reversed, and the cause remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur.