The plaintiffs, Felecia Fielder and her minor children, appeal from a summary judgment entered in favor of the defendants USX Corporation and I, arry Dillard, safety and security director of USX.
Clyde Fielder, the husband of Felecia Fielder, was employed as a train operator helper by the Fairfield Southern Company from 1989 until his death in 1995. Fairfield Southern is based in Birmingham and is engaged in the railroad industry. Specifically, Fairfield Southern is an independent contractor that performs industrial switching for United States Steel, a division of USX Corporation. All of Fairfield Southern's operations and services are conducted on property owned by USX.
On October 4, 1995, just before midnight, Clyde Fielder reported to work. His work site was known as the "Tin Mill 13" site. On that night, the remnants of Hurricane Opal were passing through the Birmingham area, causing severe weather that included high winds and heavy rain. Upon arriving at the work site, Fielder was ordered to assist in switching cars. James Martin Johnson, another employee of Fairfield Southern, was ordered to assist Fielder. Johnson was employed as a locomotive operator.
Both Johnson and Fielder were working at the entrance to the Tin Mill 13 site. USX employees were also working on that night. As part of their assignment, Johnson and Fielder were required to back a locomotive engine, attached to four cars, through a set of double doors and into a building located at Tin Mill 13. When Johnson and Fielder arrived, the double doors were shut and were held closed by a four-by-four timber. The two men opened the doors so as to move the locomotive and the attached cars into the building. The doors opened outward. Fielder opened the left door and secured it with the latch located on the door. The right door latch was broken, so Johnson and Fielder wedged that door open with the four-by-four, as they had done numerous times before.
Johnson then mounted the locomotive to begin moving it and the attached cars into the building. As they began to move, Johnson was located on the left side of the engine. Fielder was riding on the right side of the train near the rear of the end car. Although the employer had a rule against riding the car in this fashion, it was a typical practice for train operator helpers to ride the cars into the building. On the left side of the double doors was a sign that read "Danger — no clearance for man on car."
While maneuvering the cars, Johnson could not see Fielder, but maintained radio contact with him. Johnson relied on Fielder to visually assist him in backing the cars.
Above the double-door entrance is a lighting mechanism that is operated by USX employees. The lighting mechanism has a red light and a green light that indicate whether the cars may enter the building. The green light indicates that the tracks inside the building are unlocked and are aligned properly so that cars may enter the building. The red light indicates the opposite. On the night in question, the green light was illuminated, both at the time Johnson and Fielder opened the doors and when they began shoving the cars into the building.
Johnson radioed to Fielder that he intended to shove the cars against the line located on the wall inside the building. Johnson testified that this meant that he was not *Page 649 
going to shove the cars all the way to the "block" located inside the building. Johnson radioed to Fielder that he should get down from the train, so that Johnson could shove the cars "to the line." Fielder radioed back, indicating that he would comply. That was the last radio contact Johnson had with Fielder.
As Johnson was positioning the cars, he heard the right door, which he and Fielder had wedged open, hit the side of the engine. Although it was not conclusively established, it appeared that the right door may have been closed as the end car was shoved into the building, and that Johnson realized something was awry only when the door hit the engine. Johnson radioed Fielder but received no reply. Johnson dismounted the train and saw Fielder's radio lying on the ground. He then discovered Fielder's body underneath the train. Apparently, Fielder had not dismounted the train and had been killed when he was knocked underneath the wheels.
Felecia Fielder, along with her minor children, filed a wrongful-death action against USX and Larry Dillard. The plaintiffs alleged in their complaint that the defendants had known or should have known that the premises where Clyde Fielder was injured were "unsafe, hazardous, defective and dangerous." Also, they alleged that the defendants had "negligently and/or wantonly maintained the subject premises" in such a dangerous condition and had "negligently and/or wantonly failed to warn" Mr. Fielder of the dangers.
To support these claims, the plaintiffs point to the condition of the latch on the right door. Specifically, they argue that the broken latch made the door unsafe and therefore contributed to Mr. Fielder's fatal accident. Additionally, they argue that USX literally "green-lighted" Johnson and Mr. Fielder's movement of the train cars into the Tin Mill 13 building. By illuminating the green light, the plaintiffs argue, USX communicated that it was safe to enter the building. To the contrary, USX argues, and the evidence supports its argument, that the green light indicated only that conditions were "safe inside the building."
During the course of discovery, Dillard testified that USX had conducted safety inspections of the premises in the area of the Tin Mill 13 site. Dillard testified that USX had inspected physical conditions and had observed the actions of the employees. Dillard also said that USX employees had discussed the matter of safety with the leadership of the various independent contractors, but not with the individual employees of the contractors.
Relying on Dillard's testimony, the plaintiffs also argue that USX and Dillard are subject to liability on the theory of negligent inspection. USX and Dillard argue that they conducted inspections for the benefit of USX employees working on the premises and that they did not specifically inspect the door area where Clyde Fielder was injured.
 The Summary Judgment Standard
A summary judgment is proper if there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56 (c) (3), Ala. R. Civ. P. "`In reviewing a summary judgment, . . . this Court will review the record in a light most favorable to the nonmovant and will resolve all reasonable doubts against the movant.'" Copeland v.Sanford University, 686 So.2d 190, 191 (Ala. 1996) (quotingDiamond v. Aronov, 621 So.2d 263, 265 (Ala. 1993)). "In [reviewing a] summary judgment, we are limited . . . to the . . . factors considered by the trial court when it initially ruled on the motion." Barnes v. Liberty Mut. Ins. Co., 472 So.2d 1041,1042 (Ala. 1985).
 Negligence
Both parties acknowledge the existence of this well-settled rule:
 "`The owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of. But if the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor, and if he does not do this he is liable for resultant injury.'" *Page 650 
Hotel Operating Co. v. Saunders' Adm'r, 283 Ky. 345, 349-350,141 S.W.2d 260, 262 (1940), quoting Owens v. Clary, 256 Ky. 44, 46-4775 S.W.2d 536, 537 (1934); approved in Pope v. City of Talladega,602 So.2d 890, 892 (Ala. 1992).
However, the plaintiffs rely on an exception to that rule as stated in Herston v. Whitesell, 374 So.2d 267 (Ala. 1979). InHerston, this Court stated that "`one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care.'" Id. at 270, quoting United StatesFidelity Guaranty Co. v. Jones, 356 So.2d 596, 598 (Ala. 1977). The plaintiffs point to two facts to support their contention that this exception applies in this case: First, the fact that USX operated the lighting mechanism; and second, the fact that the defendants conducted safety inspections. The plaintiffs argue that the evidence of these two facts constitutes
 "substantial evidence . . . [that] showed that USX and Mr. Dillard undertook a duty regarding the safety of the employees of these `independent' railroad companies in performing their work."
Because the USX employees illuminated the green light when, the plaintiffs say, it was, in fact not safe to enter the building, the plaintiffs argue that there is a genuine issue of material fact as to whether the defendants were negligent. Also, because the defendants had failed to correct the defective door latch, or to warn Clyde Fielder of it, the plaintiffs argue that the defendants conducted their inspections negligently and that this negligent inspection also creates a genuine issue of material fact for trial. We disagree.
First, although the evidence shows that USX controlled the lighting mechanism above the doors, no evidence suggested that a green light indicated that it was safe for the independent contractor's employees to enter the building. Instead, the evidence established that the green light indicated only that the tracks inside the building were properly aligned so that cars could enter the building. The facts are undisputed that the green light was illuminated when Johnson and Fielder arrived and the doors were closed. These facts support the defendants' argument that the lighting mechanism did not indicate the condition of the doors, but indicated the condition and positioning of the tracks inside the building. Therefore, there is no issue of fact to be determined.
Second, the negligent-inspection claim must fail also. This Court has held, that to establish negligent inspection, a "plaintiff must prove (1) that the defendant had undertaken to inspect the site, particularly the area in which the injury-causing hazard is located, (2) that the defendant performed such inspection negligently, and (3) that such negligence proximately caused the injuries." Alabama Power Co.v. Williams, 570 So.2d 589, 591 (Ala. 1990). No evidence in the record indicates that the defendants conducted inspections in the particular area where Mr. Fielder's accident occurred. Therefore, the plaintiffs did not carry their burden of proof as to the first element.
This Court has held that "[t]here is no duty to warn" an employee of an independent contractor "who has equal or superior knowledge of a potential danger." Alabama Power Co. v. Williams,supra, at 592. The evidence clearly shows, without contradiction, that Mr. Fielder knew of the condition of the right door, that on numerous occasions he had used a foreign object to prop open that door, and that he knew of the severe weather on the night of his accident.
The trial court properly entered the summary judgment for the defendants.
AFFIRMED.
HOOPER, C.J., and ALMON, HOUSTON KENNEDY, SEE, and LYONS, JJ., concur.
COOK, J., concurs in the result.
SHORES, J., dissents. *Page 651