The main opinion states that, for purposes of Aspinwallv. Gowens, 405 So.2d 134 (Ala. 1981), "a `count' is ` "a separate and independent claim,"'" 980 So.2d at 386
(emphasis added) (citing Life Ins. Co. of Georgia v.Smith, 719 So.2d 797, 824 (Ala. 1998) (Cook, J., concurring in part and dissenting in part, and quoting Black's LawDictionary 348 (6th ed. 1990))). Based on this standard, I respectfully submit that the jury-charge problem discussed in the main opinion is not a "good count-bad count" problem.
Unlike the main opinion, I conclude that the issue presented pertains to only a single count — a single claim that the defendant committed negligence in the delivery of a child, resulting in the child being born with massive and irreparable brain damage. In their complaint, the plaintiffs allege *Page 388 
several things Dr. Long did wrong as part of the delivery. While each of these alleged acts and omissions, if true, would constitute a different way in which his conduct fell short of the requisite standard of care for the delivery of the child, the acts and omissions do not each constitute a "separate and independent claim."
In this case, the plaintiffs pursued a theory that Dr. Long used an improper technique in attempting a so-called "version" of the child while it was in utero, that the manner in which the version was attempted fell below the applicable standard of care, and that as a proximate result the child was born with brain damage. There was substantial evidence presented to support their theory. As a result, the single count that was presented to the jury was a "good count," despite the fact that the plaintiffs did not pursue at trial any of the other ways in which they originally alleged that Dr. Long fell short of the standard of care in the delivery of the child.
For example, though it may be true that proper monitoring of the infant's vital signs would have alerted Dr. Long to the infant's state of distress in time to avoid some or all of the injury caused to the child, I believe it is sufficiently clear from the record before us that the plaintiffs did not assert a stand-alone claim of failure to monitor vital signs, one that would be "separate and independent" of the version and the injuries to the child caused thereby. Similarly, for example, I do not agree that the allegation of a failure to properly interpret vital signs was understood by the parties to stand alone as a claim "separate and independent" from the injuries alleged to have been caused by the version attempt.
On appeal, the plaintiffs cite this Court to such cases asMutual Benefit Health Accident Association of Omahav. Bullard, 270 Ala. 558, 120 So.2d 714 (1960); F.W.Woolworth v. Kirby, 293 Ala. 248, 302 So.2d 67 (1974); andSloss-Sheffield Steel Iron Co. v. Pilgrim, 14 Ala.App. 346, 70 So. 301 (1915), as authority for the fact that the allegations of multiple acts or omissions of a defendant constituting the defendant's negligence need not all be proven in order for the single claim of negligence to be validly submitted to the jury. Although each of these cases was decided prior to Aspinwall, Aspinwall did not purport to change the common-law understanding of what is and is not a separate and independent claim or count. Instead,Aspinwall merely held that, when there are in fact two separate counts, one of which is "good" and one is which "bad," and both are submitted to the jury, a general verdict in favor of the plaintiff must be reversed. The aforementioned three cases therefore remain as good authority, each containing good explanations of how multiple factual averments can be included in a single claim of negligence or other wrongdoing. Indeed, one of those three cases, Bullard, was relied upon in this Court's post-Aspinwall decision in Spradlinv. Drummond Co., 548 So.2d 1002 (Ala. 1989). See
discussion, infra.
In Bullard, the plaintiff sought to recover benefits for back injuries under an insurance policy that provided coverage for injuries occurring in the course of the plaintiffs employment. The plaintiffs complaint alleged that his back injuries resulted from occurrences on two separate dates, several weeks apart. The insurer challenged the jury's verdict for the plaintiff, arguing that the trial court erred in not requiring the plaintiff to prove, as alleged, that he suffered injuries on two separate occasions. The Supreme Court held that the defendant had "notice" that the plaintiff "did not assume the burden of proving both injuries, but only sufficient of *Page 389 
them to support the general averment that he had sustained loss of time resulting from accidental injury occurring as specified in the policy." 270 Ala. at 570, 120 So.2d at 726. In so holding the Supreme Court stated that "[t]he complaint does state a single cause of action." Id.
Perhaps the most instructive aspect of Bullard for purposes of the present case is the Court's discussion of the case of Alabama Great Southern R.R. v. Bailey,112 Ala. 167, 20 So. 313 (1896). As the Bullard court explained:
 "The instant complaint in the respect here considered is analogous to the complaint in Alabama Great Southern R. Co. v. Bailey. . . . There the complaint averred that the personal injury to plaintiff resulted from defects in the condition of the ways, works, machinery or plant used in operation of a railroad by defendant, and then under a videlicet specified that the track `". . . was defective at or near the point of derailment, towit, cross-ties in said track were rotten, rails were insecurely fastened, the track was not properly and sufficiently ballasted, rails were old and worn."' [112 Ala. at 178, 20 So. at 316.] In holding that plaintiff was not required to prove all four alleged defects in the track, this Court said:
 "`. . . The form of this averment was notice to the defendant that plaintiff did not assume the burden of proving all these specified infirmities of the track or roadway, but only sufficient of them to support the general averment that there were defects in the condition of the track, and plaintiff was under no duty to prove more than this. The general charge, and the general charge on the first count, requested by the defendant, can therefore find no support, in the absence of evidence that the track was insufficiently ballasted, and that the rails were old and worn, there being evidence that the cross-ties were rotten and the rails were insecurely fastened; and charge 25, which would have required plaintiff to prove all these specifications, was properly refused. [Louisville N.R.R.] v. Mothershed, 97 Ala. 261, 265, 12 So. 714, [719 (1893)].'"
270 Ala. at 570, 120 So.2d at 726 (emphasis added).
Part of the above-quoted holding from Bullard was quoted with approval in the post-Aspinwall case ofSpradlin v. Drummond Co., 548 So.2d 1002, 1006-07
(Ala. 1989). After referencing Bullard, theSpradlin Court concluded:
 "Similarly, in this case, Drummond had notice that Spradlin would attempt to prove negligence and wantonness on Carroll's part either in slamming the loader into the truck or in dumping the coal into the trailer improperly. Because Spradlin produced evidence that Carroll's procedure for loading the coal arguably was not reasonable under the circumstances, the judgment based on the directed verdict in favor of Drummond on the negligence claims is due to be, and it hereby is, reversed, and the cause remanded."
548 So.2d at 1007 (emphasis added).
Similarly, my review of the record in the present case leads me to conclude that the plaintiffs never assumed the burden of proving all the specific shortcomings of Dr. Long as a prerequisite to recovery. It was sufficient to make out a claim that could be submitted to the jury if the plaintiffs proved one of the alleged shortcomings and proved that this shortcoming caused the child's injury. The plaintiffs did this by proving that Dr. Long negligently attempted a version and that this caused the child's injury. *Page 390 
The conclusion that the complaint contained only one negligence count is not altered merely because this case involves a claim against a healthcare provider. The main opinion cites § 6-5-551, Ala. Code 1975, a part of the Alabama Medical Liability Act of 1987, as amended, to suggest otherwise. I see nothing in that statute that redefines the common-law concept of a "count" or a "claim."
Instead, § 6-5-551 speaks to the pleadingrequirements in medical-liability actions. In this regard, it was intended to "qualif[y] the generalized pleadings permitted by Rule 8(a)[, Ala. R. Civ. P.]."[6] Mikkelsenv. Salama, 619 So.2d 1382, 1384 (Ala. 1993). Specifically, the statute requires that there be "include[d] in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff," including, where feasible and ascertainable, the "date, time, and place" of each act or omission. In addition, the last sentence of § 6-5-551 specifically limits discovery and the evidence that may be introduced at trial to the specifically alleged acts and omissions. Nothing in § 6-5-551 purports to require, or suggests, that the specifically alleged acts and omissions each be considered as claims "separate and independent" from one another. (To construe the statute in this manner would mean that related acts that combine to cause an injury, or each event in a sequence that leads to an injury, must be treated as its own separate and independent claim.) Rather, the purposes of the statute are (1) to avoid surprise and allow for preparation of a defense by requiring full disclosure to healthcare providers of each and every way in which the plaintiff alleges the provider failed to provide proper care, and (2) to prevent the introduction of collateral acts or omissions on the part of healthcare providers. SeeMikkelsen, supra; Baptist Med. Ctr. Montclair v. Wilson,618 So.2d 1335, 1340 (Ala. 1993) (Maddox, J., dissenting) ("As I see it, the clear legislative intent behind § 6-6-551 is to give defendant health care providers at least 90 days' pre-trial notice of a plaintiffs allegations against which they will be required to defend at trial."); see also John Scott Thornley, Diagnosing Section 6-5-551 of the AlabamaMedical Liability Act and the Inadmissibility of CollateralActions and Omissions Against Health Care Providers, 54 Ala. L.Rev. 1441, 1442 (2003) ("In essence, § 6-5-551 bars plaintiffs from introducing collateral `acts or omissions' of health care providers.").[7] These purposes are fully achieved in the present case.
Based on the foregoing, I conclude that the complaint in the present case states only a single claim of negligence against Dr. Long. Consequently, I cannot conclude that an automatic reversal under the "good count-bad count" principle is triggered by the trial court's references in its jury charge to the allegations in the complaint of various ways in which his conduct fell below the standard of care.[8] Nonetheless, I concur in the result reached by the main *Page 391 
opinion on the basis of more general principles of law governing jury charges as discussed below.
"[I]t is the duty of the trial court to instruct the jurors fully and correctly on the applicable law of the case and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for truth." American Cast Iron Pipe Co. v.Williams, 591 So.2d 854, 856 (Ala. 1991) (citing GraycoRes., Inc. v. Poole, 500 So.2d 1030, 1033 (1986)). Under Alabama law, "each party is entitled to have proper instruction given the jury regarding the issues presented in the case."American Cast Iron Pipe Co., 591 So.2d at 856. "`"[A]n incorrect or misleading charge may be the basis for the granting of a new trial."'" George H. Lanier Mem'l Hosp. v.Andrews, 809 So.2d 802, 806 (Ala. 2001) (quoting Kingv. W.A Brown Sons, Inc., 585 So.2d 10, 12
(Ala. 1991)). It is well settled that
 "[t]he instructions given by the trial court should be confined to the issues raised by the pleadings in the case at bar and the facts developed by the evidence in support of those issues or admitted at the bar. . . . In other words, the particular matters to be covered in the instructions depend upon the issues joined by the pleading and supported by the evidence. . . . Both the plaintiff and the defendant are entitled to have issues of fact presented by the pleadings submitted to the jury without the introduction of extraneous matter which may mislead them or divert their minds from a consideration of the evidence pertinent to the real issues."
75A Am.Jur.2d Trial § 991 (2007) (emphasis added; footnotes omitted). "Ordinarily, a court is not warranted in submitting to a jury by instructions an issue raised by a pleading which is abandoned by the party pleading it, and in support of which no evidence is presented." Id. at § 995.
The plaintiffs contend that numerous curative aspects of the trial court's instructions make it unnecessary for this Court to reverse the judgment in this case on the ground that the trial court's jury charges referenced specific unproven factual allegations from the complaint. The problematic charges comprise less than a page out of the more than 50 pages of the record containing the jury charges. The trial court advised the jury that the allegations were taken from the plaintiffs' complaint, and thereafter also referenced the defendant's answer and his denial of those allegations. The plaintiffs emphasize that the trial court repeatedly instructed the jury as to the necessity for expert testimony as to what were acceptable standards of care and as to whether those standards of care had been met. As a result, they argue, the trial court's references to the factual allegations in the complaint were not misleading.
Ultimately, I do not find it necessary to decide whether the above-discussed portion of the trial court's jury charges referencing factual allegations of the complaint, by itself, created such a risk of misleading the jury as to require reversal. The defendants also argue on appeal that the trial court gave confusing instructions regarding the alleged agency relationships between various defendants, made certain shorthand references to various defendants in a manner that held the potential for confusion, and instructed the jury to use a verdict form that was confusing and improper. While I see no need to parse each of these assertions for purposes of this writing, I generally find these arguments to have substantial merit. I am persuaded that the risk of prejudice that existed as a result of the trial court's jury charges, taken as a whole, is sufficient *Page 392 
under the above-stated principles to warrant reversal of the judgment in this case and a remand of this case for a new trial. It is for this reason that I concur in the result reached by the main opinion.
COBB, C.J., concurs.
[6] Generally, under Rule 8(a), Ala. R. Civ. P., pleadings need only put the defending party on notice of the claims against him or her.
[7] The other provision of the Alabama Medical Liability Act relied upon by the main opinion, § 6-5-549, does nothing more than restate the common-law standard of "substantial evidence" for testing the sufficiency of the evidence as to a given claim.
[8] References to the contentions of the parties in their pleadings in a trial court's oral charge to the jury is a practice that traditionally has been condoned in Alabama.E.g., Cities Serv. Oil Co. v. Griffin, 357 So.2d 333,345 (Ala. 1978).