## Owens et al. v. Clary.

(Decided Oct. 26, 1934.)

HARDESTY & MELVILLE for appellants.
JOSEPH P. GOODENOUGH for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

From a judgment entered upon a verdict in favor of the appellee, who was plaintiff below, against the appellant in the sum of $674.40, by way of damages for personal injuries, this appeal is prosecuted.

In the fall of 1931, appellant acquired the ownership of a block of buildings in the city of Newport, known as 112, 114, 116, and 118 Washington avenue. The property in question is four distinct brick buildings, two stories high, but all under one roof. We gather from briefs that the property had been through a flood and was in a very dilapidated condition. At all events, the appellant, who appears to have himself been a carpenter, decided to rehabilitate the property. Part of the rehabilitation comprised the installation of elec-

tric wiring and fixtures in the four buildings. The appellee and Carl Gerth were partners doing business under the trade-name of Latonia Electric Company. They were asked to bid on the work and did so, and on their bid were successful in securing the contract. On this appeal, it is contended by the appellant, and is conceded by the appellee, that he and Gerth were independent contractors with reference to this work.

For the appellee, the testimony establishes that Gerth had been working in the installation of the electric work for several days prior to November 2, 1931; that he asked the appellee to come over in the afternoon of November 2d and help him run some wires through the wall between 116 and 114; that appellee went around to the buildings and entered the property through 116; that the appellant and his brothers were there doing some carpenter work, but none of them said anything to him about not working on the buildings that day or about the condition of the premises; that he went through 116 into the back yard up the back steps into 114, and then on up to the second floor of that number, where he had to be in order to pull the wires through; that one of the brothers of appellant Owens was in the room doing some carpenter work; that to all outward appearances the floor in the room looked safe and sound and that appellee knew nothing to the contrary; that appellee walked out to the center of the room and, while standing there, the floor, due to its defective condition, gave way under his weight, and he was precipitated into the cellar beneath, suffering severe injuries.

Appellant testified that when appellee came there that afternoon he told appellee that he was not ready for him to come to work and that he told appellee that the place was in a bad state of repair, and that it was obvious to any one who looked that such was the state of case. Appellant admitted that he knew of the defective condition of the flooring in all of the property, and especially of that which gave way under appellee. From this resume of the evidence, it is of course apparent that there were established the facts that the owner of the property knew of the defective condition of the flooring which gave way, and knew that appellee was there for the purpose of working. It was in dispute whether or not appellant warned appellee of the defective condition of the flooring or told him that he did not wish

appellee to work there that afternoon, but the jury chose to believe appellee rather than appellant in this dispute. Appellant here takes the position that conceding all appellee claims, he (the appellant) is yet not liable to the appellee because the appellee was an independent contractor, and that being such the appellant owed him no duty to furnish him a reasonably safe place in which to work. It is the general rule that the contractee does not owe the contractor the duty of furnishing him a reasonably safe place wherein to work. An obvious illustration of this principle is where the owner of a piece of vacant property enters into a contract with an independent contractor to erect a building on the lot for what is sometimes called a "turnkey job." In such state of case the owner of the vacant lot of course does not owe the independent contractor the duty of furnishing him a reasonably safe place wherein to do the work incident to the erection of the building. But to this general rule there are exceptions, as pointed out in the case of Wells v. W. G. Duncan Coal Co., 157 Ky. 196, 162 S. W. 821, 822. We there said:

"But the owner of the premises may be liable under the particular circumstances where a duty devolving upon him is not fulfilled. He should exercise a reasonable care to protect an independent contractor and his servants from dangers arising from the condition of the premises, concerning which he is aware, and concerning which they have neither actual nor constructive notice."

In 44 A. L. R. 894, it is said:

"If the circumstances under which the stipulated work is performed are such as to place the contractor in the position of an invitee in respect of the premises or plant of the contractee, the latter becomes answerable for such injuries as the former may sustain by reason of any act which constitutes a breach of one of the duties which the law imposes upon him as an invitor. The rule applicable to this situation has been thus stated: 'The owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of. But if the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner

to warn the contractor, and if he does not do this he is liable for resultant injury. The same rule applies to the servants of the contractor, and to the subcontractor and his servants.''

In 39 C. J. 1345, we find that the rule as thus stated is the rule in the majority of jurisdictions, although there are some who take a contrary view. We believe the majority view to be sound, for, as said in Arizona Binghampton Copper Co. v. Dickson, 22 Ariz. 163, 195 P. 538, 540, 44 A. L. R. 881:

"The reason for such rule is that the law imposes upon every owner of premises the duty of keeping them in a reasonably safe condition so that anybody, whether contractor, servant, or invitee, lawfully thereon, may not be unduly exposed to danger. Thompson on Negligence, vol. 1, sec. 679, says the contractor—'stands on the footing of a stranger, or, if he is injured through defect in the premises of the proprietor, he is entitled equally with a servant of the proprietor to invoke the principle that the proprietor stands under the absolute duty of taking reasonable care and exercising reasonable skill to the end that the premises, tools, and appliances put in the hands of his servant are reasonably safe for the purposes intended. If the contractor does not occupy this favorable position, he at least occupies a position as favorable as that of a person who is invited to come upon the premises of another, and who is injured in consequence of a dangerous pitfall thereon.' ''

It cannot be doubted but that appellee at the time of his injuries was in as favorable a position as an invitee upon the premises of appellant. Appellant admits that he knew of the defective condition of the premises. The jury found that the appellee did not have actual or constructive notice of such condition. In such a state of fact, the owner of the premises is under the duty of exercising ordinary care to protect an independent contractor who has been called to do some work upon the premises from dangers which he (the owner) knows, and of which the independent contractor is ignorant. The defense, therefore, of independent contractor was not available in this case, and hence the grounds relied upon for reversal are without cogency.

The judgment is affirmed.