Jerry W. SPARKS and Gayle Sparks, Appellants,

v.

RE/MAX ALLSTAR REALTY, INC.; Metro Termite Pest Control Company; and Kelly Colliver, Appellees.

No. 1999–CA–001138–MR.

Court of Appeals of Kentucky.

Nov. 9, 2000.

Discretionary Review Denied Oct. 17, 2001.

---

Robert F. Ristaneo, Lexington, KY, for Appellants.

Leslie P. Vose, Estill D. Banks II, Landrum & Shouse Lexington, KY, for Appellee Metro Termite Pest Control Company.

LaDonna L. Koebel, Lexington, KY, for Appellee Re/Max Allstar Realty.

J. Daniel Farrell, Elam, Miller & Farrell, P.S.C., Lexington, KY, for Appellee Kelly Colliver.

Before GUDGEL, Chief Judge; HUDDLESTON and KNOPF, Judges.

*OPINION*

HUDDLESTON, Judge:

Within a month after Jerry W. Sparks and his wife, Gayle, purchased a forty-year-old home in a rural area of Jessamine County for $54,000.00, termites emerged from a wall in the house. Subsequent inspections by an exterminator, a contractor and a structural engineer revealed substantial termite damage in the crawl space under the house and in other areas of the residence.

The Sparkses sued seeking damages from the sellers of the house; the mortgage holder; the listing real estate agent; their own real estate agent, RE/MAX Allstar Realty, Inc.; an extermination company which had inspected the property prior to the closing and had treated it for termite infestation, Metro Termite Pest Control Company; and the individual who had appraised the property, Kelly Colliver. The sellers of the house, their real estate agent and the mortgage holder were granted summary judgment and are no longer involved in this case. Following completion of discovery, the remaining defendants' motions for summary judgment were granted, after which the Sparkses appealed to this Court.

The following issues are raised on appeal:

(1) Are there material fact issues to be resolved by a jury as to (a) whether Metro violated its contract with the Sparkses, (b) whether Metro's failure to discover extensive termite infestation amounted to gross negligence, and (c) whether Metro engaged in unfair, false or misleading acts or practices in violation of the Consumer Protection Act? [1]

(2) Did Kelly Colliver, who is a certified Federal Housing Administration appraiser, owe the Sparkses a duty to exercise reasonable care in appraising the house and did she violate that duty and/or the Consumer Protection Act?

(3) Did RE/MAX have a fiduciary duty to the Sparkses which it violated by recommending that the Sparkses employ Metro to perform the termite inspection?

## I. FACTS

On February 17, 1996, the Sparkses executed an offer to purchase a home containing 896.1 square feet located about three miles east of Nicholasville in Jessamine County from Darrell B. and Karen K. Montgomery. The Sparkses enlisted the assistance of Kathy Graviss of Re/Max Allstar Realty, Inc., in negotiating the purchase, while the Montgomerys utilized Terry Turner of Century 21 Progressive Realtors and Auctioneers. As part of the transaction, the Montgomerys submitted a disclosure statement indicating that Ivan Bird had treated the structure for termites in 1994.

As required by Kentucky Mortgage Company,[2] Kelly Colliver, an FHA approved appraiser, conducted an appraisal of the property and valued it at $55,000.00. Based on the appraisal, Kentucky Mortgage Company agreed to loan the Sparkses $54,000.00 secured by a first mortgage on the premises.

Prior to closing, Kentucky Mortgage Company required a termite inspection. The Sparkses asked for the names of some companies, and Graviss provided the names of three, including Metro. Upon inspection, Metro found termite infestation and treated the property.

1. Ky.Rev.Stat. (KRS) 367.170 and 367.220(1).

2. At closing, Kentucky Mortgage Company assigned its mortgage to Norwest Mortgage, Inc.

Less than a month after the closing, a swarm of termites emerged from a wall. The Sparkses contacted Metro, which undertook to again treat the problem. The Sparkses subsequently employed Elite Pest Control to conduct a further inspection. Elite discovered severe visible wood damage in the crawl space under the home. A contractor, Russ Milburn, also inspected the structure and prepared an estimate as to the visible damage. Joseph Poage, a structural engineer employed by JMP, Inc., inspected the structure. He reported substantial visible termite damage in the crawl space and other areas of the residence.

## II. METRO TERMITE PEST CONTROL COMPANY

The Sparkses claim that there is evidence of record to support their claim that Metro violated the terms of its contract with the Sparkses and acted negligently in inspecting and treating their property for termites and that it violated the Consumer Protection Act. For that reason, the Sparkses claim, the circuit court erred in granting summary judgment for Metro.

In *Steelvest, Inc. v. Scansteel Service Center, Inc.*,[3] the Supreme Court said that in considering whether to grant a motion for summary judgment, the circuit court must view the record

in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor. Even though a trial court may believe the party opposing the mo-

tion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact. The trial judge must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists.[4]

This Court has said that the standard of review on appeal of a summary judgment is "whether the trial court correctly found that there were no genuine issues as to any *material* fact and that the moving party was entitled to judgment as a matter of law." We went on to say that "[t]here is no requirement that the appellate court defer to the trial court since factual findings are not at issue."[5]

The evidence in this case, viewed in the light most favorable to the Sparkses, is sufficient to support a finding by a jury or by the court acting as fact-finder that Metro failed to properly inspect the property and report visible termite damage and that it failed to adequately treat the termite infestation it found. Actions asserting the liability of termite inspectors or exterminators for work performed or representations made have been based on theories of negligence, breach of contract or fraud.[6] Fraud is not alleged in this case. However, Metro did enter into a contract with the Sparkses to inspect the home they planned to purchase for termites and, later, to treat the home for termite infestation. Metro had a duty to the Sparkses because of the parties' contractual relationship to inspect for termite infestation and damage and to report its findings to the Sparkses, and it had a duty to properly treat any active infestation it found.[7] If

**3.** Ky., 807 S.W.2d 476 (1991).

**4.** *Id.* at 480 (citations omitted).

**5.** *Scifres v. Kraft*, Ky.App., 916 S.W.2d 779, 781 (1996) (citations omitted) (emphasis supplied).

**6.** *See generally* Francis M. Dougherty, Annotation, *Liability of Termite or Other Pest Control*

or *Inspection Contractor for Work or Representations,* 32 A.L.R.4th 682, 686 (1984).

**7.** *Penco, Inc. v. Detrex Chem. Indus., Inc.,* Ky.App., 672 S.W.2d 948, 951 (1984). In *Penco,* this Court noted:

While one who has a right of action on a contract may sometimes sue on the contract or in tort for the breach of it, one who is

the fact finder chooses to believe the Sparkses' evidence, it could find that Metro negligently failed to discover or report visible termite damage and that it negligently failed to effectively treat the infestation that it did discover.

When the evidence of record is considered in a light most favorable to the Sparkses, there is a material factual dispute as to whether Metro sufficiently investigated and treated the termite infestation. Although Metro cites evidence to support its assertion that it acted properly, whether, in fact, Metro breached its duty to the Sparkses is an issue that should be resolved by the fact-finder. Because there exists a material factual dispute, summary judgment dismissing the Sparkses' complaint against Metro was inappropriate.

■ The Sparkses also claim that Metro violated certain provisions of the Consumer Protection Act[8] thus making it liable for the damages they sustained. They allege that the violation occurred when Metro represented that its remedial efforts would remedy the termite problem. Because Metro failed to thoroughly inspect for termites and to report visible, substantial termite damage, it is claimed, the company acted in a grossly negligent manner.

The Consumer Protection Act, Kentucky Revised Statutes (KRS) 367.220(1) provides, in relevant part, that:

Any person who purchases or leases goods or services primarily for personal, family or household purposes and there-by suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action ... to recover actual damages. The court may, in its discretion, award actual damages and may provide such equitable relief as it deems necessary or proper. Nothing in this subsection shall be construed to limit a person's right to seek punitive damages where appropriate.

Unlawful acts are defined in the Act as "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."[9] The term "unfair" means unconscionable.[10]

In *Capitol Cadillac Olds, Inc. v. Roberts*,[11] the Robertses filed an action against a dealership based on, *inter alia*, a violation of the Consumer Protection Act for failing to correct a mechanical problem with and repair damage to their car. The Robertses' claim was

predicated on the view that [the dealership] failed to competently repair the damage, but attempted to persuade them that the work was done properly, and that at some point [the dealership] attempted to deceive them as to whether or not "factory" paint had been used. The parties' repair contract was for completed performance and [the dealership], as the party charged with performance, was entitled to use its skill and

not a party to the contract or in privity thereto may not maintain an action for negligence which consists merely in the breach of contract ... [.]
Moreover, it is fundamental that for there to be actionable negligence there must be a violation of duty owed to the party claiming on the ground of negligence. If no duty exists no legal liability can arise from or on account of negligence ... [.]

*Id.* (quoting *B & C Const. Co. v. Grain Handling Corp.*, 521 S.W.2d 98, 102–03 (Tex.Ct. Civ.App.1975)).

8. KRS 367.170.

9. KRS 367.170.

10. *Id.*

11. Ky., 813 S.W.2d 287 (1991).

judgment as to the method and materials.[12]

The Court concluded that reasonable people could differ as to whether the performance was satisfactory under the contract. It went on to say that:

> Not every failure to perform a contract is sufficient to trigger application of the Consumer Protection Act. The statute requires some evidence of "unfair, false, misleading or deceptive acts" and does not apply to simple incompetent performance of contractual duties unless some element of intentional or grossly negligent conduct is also present.[13]

The Court concluded that the dealership did not violate the Act.

■ The Sparkses argue that intent is not a prerequisite to establishing a violation of the Consumer Protection Act. However, based on *Roberts,* they must either show that Metro's actions were intentional or grossly negligent.

■ "Gross negligence" is a "conscious and voluntary act or omission which is likely to result in grave injury when in face of clear and present danger of which alleged tortfeasor is aware."[14] While it is true that the Sparkses did not have to offer evidence of intent, they had to offer evidence of a "conscious and voluntary act or omission" in failing to adequately inspect for termites to survive a motion for summary judgment.

Viewing the evidence in a light most favorable to the Sparkses, there exists a dispute regarding material facts—in particular, the extent to which Metro inspected and treated the structure and whether in doing so it acted in a grossly negligent manner. As a result, the circuit court erred in granting summary judgment on this issue.

## III.  KELLY COLLIVER

■ The Sparkses argue that Colliver breached her duty of care to the Sparkses [15] and that she, too, violated the Consumer Protection Act.

■ The Sparkses signed a document entitled "Important Notice to Purchasers Regarding the Property Which You Are Purchasing." The document provides, in relevant part that: "[t]he undersigned purchasers hereby acknowledge that: ... [a]ny appraisal made for the property which we are purchasing was made only for the benefit of Kentucky Mortgage Company, and should not be relied upon by any othe[r] party." Because the Sparkses signed the disclosure acknowledging that they could not rely on the appraisal, as a matter of law Colliver, a FHA certified appraiser, had a duty of care only to the federal government.[16]

---

**12.**  *Id.* at 291.

**13.**  *Id.* (quoting *Dare To Be Great, Inc. v. Commonwealth, ex rel. Hancock,* Ky., 511 S.W.2d 224 (1974)).

**14.**  *Black's Law Dictionary* 1033 (6th ed.1990) (citing *Glaab v. Caudill,* 236 So.2d 180, 182, 183, 185 (Fla.Dist.Ct.App.1970)).

**15.**  Actionable negligence consists of: (1) a duty; (2) a breach of that duty; and (3) consequent injury. The absence of any one of the three elements is fatal to the claim. *Mullins v. Commonwealth Life Ins. Co.,* Ky., 839 S.W.2d 245, 247 (1992); *Illinois Central RR v. Vincent,* Ky., 412 S.W.2d 874, 876 (1967).

**16.**  Under Kentucky law, one party to a contract may agree to release another from liability for ordinary or gross negligence, but not for willful or wanton negligence. *Cobb v. Gulf Refining Co., Inc.* 284 Ky. 523, 145 S.W.2d 96 (1940); *Greenwich Ins. Co. v. Louisville & N.R. Co.,* 112 Ky. 598, 66 S.W. 411 (1902); *Jones v. Hanna,* Ky.App., 814 S.W.2d 287 (1991); *Donegan v. Beech Bend Raceway Park, Inc.,* 894 F.2d 205 (6th Cir. 1990). There is no allegation in the case

Thus, the Sparkses cannot recover against Colliver; and the circuit court did not err in awarding summary judgment for the appraiser.

## IV.  RE/MAX ALLSTAR REALTY, INC.

Finally, the Sparkses argue that Re/Max breached its duty to them by recommending a termite control company. When the Sparkses were informed of the need for a termite inspection prior to closing, Mrs. Sparks sought advice from Kathy Graviss. Graviss mentioned three companies, including Metro, and said that Kentucky Mortgage sometimes used Metro. The Sparkses argue that Graviss breached her fiduciary duty to them as their real estate agent by suggesting that Metro could adequately inspect and, if necessary, treat the house they intended to purchase.

Making a recommendation does not amount to guarantee of performance. Frequently, professionals make recommendations to their clients. Here, Graviss recommended Metro along with two other

before us that Colliver was guilty of gross

companies. In doing so, she was not accepting any responsibility for the work that Metro would perform nor providing a guarantee. For these reasons, the circuit court correctly granted summary judgment for Re/Max Allstar Realty Company.

## V.  CONCLUSION

Accordingly, we affirm the summary judgment in favor of Re/Max Allstar Realty, Inc., and Kelly Colliver. We reverse the summary judgment granted Metro Termite Pest Control Company and remand this case to Jessamine Circuit Court for further proceedings consistent with this opinion.

ALL CONCUR.

negligence or willful or wanton negligence.