Charles E. BREWSTER, Appellant,

v.

COLGATE–PALMOLIVE COMPANY and Jewish Hospital Healthcare Services, Appellees.

and

Jewish Hospital Healthcare Services, Inc., Appellant,

v.

Charles Brewster, Appellee.

Nos. 2006–SC–000584–DG, 2007–SC–000366–DG.

Supreme Court of Kentucky.

Jan. 22, 2009.

Rehearing Denied April 23, 2009.

Kenneth L. Sales, Joseph Donald Satterley, Paul Jason Kelley, Rickie A. Johnson, Sales, Tillman, Wallbaum, Catlett &

Satterley, Louisville, KY, Counsel for Charles E. Brewster.

Rebecca F. Schupbach, Lisa Catherine DeJaco, Wyatt, Tarrant & Combs, LLP, Louisville, KY, Counsel for Colgate–Palmolive Company.

James M. Gary, Russell Harper Saunders, Weber & Rose P.S.C., Louisville, KY, Counsel for Jewish Hospital Healthcare Services, Inc.

Valerie F. Settles, Pacific Legal Foundation, Stuart, FL, Counsel for Amicus Curiae Pacific Legal Foundation.

Opinion of the Court by Chief Justice MINTON.

## I. *INTRODUCTION.*

Decades after working on projects in various premises owners' buildings, an independent contractor's employee developed asbestosis, the cause of which the employee claimed arose from exposure to asbestos while working in the various buildings. Assuming that asbestos exposure occurred on the premises as the employee claimed, under what circumstances can the premises owners be held liable for the employee's disease? Did the owners have a duty to warn of the presence and potential dangers of asbestos, which at one time was used extensively in building construction but later attracted notoriety as a potential health hazard?

Some argue that these questions are answered by longstanding Kentucky precedent establishing a duty to warn only where the building owner has actual knowledge of the danger and the independent contractor had neither actual nor constructive knowledge of the danger.[1] Oth-

---

1. *See Owens v. Clary,* 256 Ky. 44, 75 S.W.2d 536, 537 (1934) (adopting/quoting rule from 44 A.L.R. 894 that "[t]he owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of. But if the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the con-

ers argue that Kentucky should adopt an approach used by other state courts, which imposes a duty to warn only where the premises owner had superior knowledge of the danger at the time of exposure.[2] Still others press for more liberalized recovery afforded by the burden-shifting approach used by Kentucky courts in business invitees' slip-and-fall cases.[3]

█ We accepted discretionary review to provide guidance concerning when a premises owner's duty to warn independent contractors [4] arises in asbestos cases and in other hidden-danger cases.[5] We now reaffirm the applicability of our long-standing precedent of *Owens v. Clary*, decline to adopt the similar-sounding but more dispute-producing superior knowledge approach and decline to expand the burden-shifting approach as used in customer slip-and-fall cases to the present context.

Charles E. Brewster filed the case before us after he was diagnosed with asbestosis several years ago. Brewster alleges that he was exposed to asbestos-containing building materials while performing construction work for independent contractors at Colgate–Palmolive's plant in Jeffersonville, Indiana, in the 1960s and 1970s and at Jewish Hospital in Louisville in the 1970s. Brewster seeks to hold both premises owners liable for his asbestosis. Apparently, Brewster never sought workers' compensation benefits for asbestosis from his independent-contractor employers because the statute of limitations had expired for such claims.[6] The trial court granted summary judgment in favor of the premises owners. We agree with the Court of Appeals that summary judgment was proper based on the lack of evidence to establish a duty to warn under Kentucky law, and we decline to reach other issues raised by the parties as unnecessary for

tractor, and if he does not do this he is liable for resultant injury. The same rule applies to the servants of the contractor, and to the subcontractor and his servants.") (internal quotation marks omitted). *See also Ralston Purina v. Farley*, 759 S.W.2d 588, 590–92 (Ky.1988) (as warning made to independent contractor was sufficient and law did not demand premises owner to warn contractor's employees individually, we declined to analyze whether duty to warn existed but reiterated above quote from *Clary.*).

2. *See, e.g., Amear v. Hall*, 164 Ga.App. 163, 296 S.E.2d 611, 615 (Ga.Ct.App.1982); *Armstrong v. Cerestar USA, Inc.*, 775 N.E.2d 360, 372 (Ind.Ct.App.2002). These were among several cases cited in the trial court's opinion as establishing a duty to warn only where the premises owner had "superior knowledge" to that of the contractor.

3. *See Lanier v. Wal–Mart Stores, Inc.*, 99 S.W.3d 431, 437 (Ky.2003) (where a business invitee/customer is injured after slipping on a substance on the floor, establishing "a rebuttable presumption that shifts the burden of proving the absence of negligence, *i.e.*, the

exercise of reasonable care, to the party who invited the injured customer to its business premises.") Brewster argues that a similar burden-shifting approach should be employed to this case and similar cases.

4. We note that the premises owner's duty to warn independent contractors under Kentucky law is not a duty individually to warn each employee of an independent contractor. So long as the premises owner has provided any necessary warning of a hidden danger to the independent contractor, the premises owner's failure to warn each employee of the independent contractor individually does not result in liability. *Farley*, 759 S.W.2d at 590.

5. Hidden-danger cases include cases involving exposure to other substances, like asbestos, once regarded as beneficial but now understood to cause harm to humans.

6. Kentucky Revised Statutes (KRS) 342.316(4)(a) provides that "in cases of radiation disease or asbestos-related disease, a claim must be filed within twenty (20) years from the last injurious exposure to the occupational hazard."

resolution.[7] We further decline to extend the burden-shifting approach employed in customer slip-and-fall cases.

## II. *FACTS.*

Brewster worked as a laborer for several employers on numerous worksites between 1950 and 1979. Between 1966 and 1976, Brewster worked often for Dahlem Construction, a company based in Louisville, Kentucky. While employed by Dahlem, he worked on projects at the Colgate–Palmolive plant in Jeffersonville, Indiana, for one or more brief periods.[8] He recalled tearing out various materials at the plant. He also recalled pouring concrete for a new construction project.

Between employment stints at Dahlem, Brewster worked for Wilhelm Construction Company for a period beginning in 1970. He spent all of his time working for Wilhelm at Louisville's Jewish Hospital. He recalled tearing out old materials, including insulation for ceilings, wiring, and tanks, while a new addition to the hospital was being built. He also recalled being present when new insulation was being installed.

A back injury disabled Brewster from work beginning in 1980. In 2001, he was diagnosed with asbestosis and brought suit against numerous parties. His suit alleged negligence claims against several property-owner defendants, including Jewish Hospital and Colgate, stating that they breached duties by failing to warn independent contractors working on their premises of the presence and dangers of asbestos. Eventually, the trial court granted summary judgment in favor of Jewish Hospital on the grounds of Brewster's failure to produce evidence of exposure to asbestos at Jewish Hospital and failure to show breach of a duty owed to him by Jewish Hospital. The trial court also granted summary judgment in favor of Colgate based on Brewster's failure to show breach of any duty owed to him by Colgate, although the trial court rejected Colgate's claim of statutory immunity from Brewster's tort claim based upon the "up-the-ladder" defense.[9]

7. *See* Court of Appeals opinion, pp. 4–5 ("There are several issues that have been raised by the parties on appeal. These include the sufficiency of the Brewster's proof regarding his exposure to asbestos, Colgate's up-the-ladder immunity defense under workers' compensation law, and the circuit court's personal jurisdiction over Colgate in this case. However, we believe the summary judgments of the court may be affirmed based solely on the premise liability issue without regard to the other issues that have been raised.") Similarly, we reach only the issue of duty. Since our conclusion that the premises owners did not have a duty to warn is dispositive, we need not address and express no opinion on other raised issues, such as exposure, up-the-ladder immunity, and personal jurisdiction over Colgate–Palmolive (given that the alleged asbestos exposure would have occurred at its plant in Jeffersonville, Indiana).

8. Despite the fact that Brewster worked at the Colgate–Palmolive plant in Indiana, we apply Kentucky law to this tort case because of "significant contacts" with Kentucky—namely, the fact that this case involves alleged injuries to a Kentucky resident allegedly arising out of Colgate–Palmolive's hiring a Kentucky independent contractor (Dahlem). *See Foster v. Leggett,* 484 S.W.2d 827, 829 (Ky. 1972) (stating that in tort cases, "significant contacts—not necessarily the most significant contacts" justified application of Kentucky law under Kentucky choice-of-law principles).

9. *See General Electric Company v. Cain,* 236 S.W.3d 579, 585 (Ky.2007) ("If premises owners are 'contractors' as defined in KRS 342.610(2)(b), they are deemed to be the statutory or 'up-the-ladder' employers of individuals who are injured while working on their premises and are liable for workers' compensation benefits unless the individuals' immediate employers ... have provided workers' compensation coverage.").

The Court of Appeals affirmed the trial court on the ground that the property owners did not have a duty to warn of dangers of possible asbestos exposure or to take steps to protect Brewster from asbestos exposure because there was no evidence that either property owner had actual knowledge of a hidden danger of asbestos, citing both *Farley* and *Clary.* Although the Court of Appeals agreed with the trial court that the premises owners had no duty to warn, it rejected as inapplicable under Kentucky law the superior-knowledge standard cited by the trial court. The Court of Appeals also declined to extend to employees of independent contractors injured on the owner's premises the burden-shifting approach used for business customers in slip-and-fall cases as in *Lanier.*[10] We now affirm the Court of Appeals.

## III. *ANALYSIS.*

Before we address the question of the premises owner's duty to warn, we note that other cases involving similar issues of potential premises-owner liability might be resolved without reaching the issue of duty if the trial court determines that the premises owner is entitled to up-the-ladder immunity. Jewish Hospital apparently never claimed this type of immunity. Colgate did claim it, but the trial court did not grant it summary judgment on this ground.

While we will express no opinion about whether Colgate could have been ultimately entitled to up-the-ladder immunity because we resolve this case on other grounds, we do not agree with Colgate that our recent ruling in *Cain* automatically establishes that Colgate is entitled to up-the-ladder immunity in this case. Since Brewster testified to pouring concrete at Colgate for a new addition, we think that the trial court properly found material issues of fact concerning the regular and recurrent characteristic of his work at Colgate, despite the fact that some tasks he performed—ripping out old materials in what may have been a routine maintenance project—closely resembled those held by this Court to be regular and recurrent in another case involving an independent contractor's employee allegedly contracting an occupational disease at Colgate.[11] We refer those seeking informa-

---

10. 99 S.W.3d 431.

11. 236 S.W.3d at 595–96 (holding that Colgate entitled to summary judgment in its favor on plaintiff James Rehm's claims arising from removing and replacing various pieces of equipment, given evidence that Colgate's employees frequently performed such tasks and lack of evidence that Rehm's projects differed significantly from those performed by employees). *See also id.* at 588 (generally stating test for "regular and recurrent" activity prong of up-the-ladder immunity:

"Work of a kind that is a 'regular or recurrent part of the work of the trade, business, occupation, or profession' of an owner does not mean work that is beneficial or incidental to the owner's business or that is necessary to enable the owner to continue in business, improve or expand its business, or remain or become more competitive in the market. It is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees.

The test is relative, not absolute. Factors relevant to the 'work of the ... business/ include its nature, size, and scope as well as whether it is equipped with the skilled manpower and tools to handle the task the independent contractor is hired to perform. Employees of contractors hired to perform major or specialized demolition, construction, or renovation projects generally are not a premises owner's statutory employees unless the owner or the owners of similar businesses would normally expect or be expected to handle such projects with employ-

tion on the up-the-ladder defense to our recent decision in *Cain,* which discusses in some detail the regular and recurrent aspect of the up-the-ladder defense. Ultimately, however, we resolve Brewster's case on the issue of duty, not on the issue of up-the-ladder immunity.

A. *Both Premises Owners Were Entitled to Summary Judgment Based on Lack of Evidence to Support a Duty to Warn Independent Contractors of Hidden Danger of Asbestos.*

 Although Kentucky law prohibits granting summary judgment where there are "valid issues to try," [12] "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." [13] Because Brewster failed to offer affirmative evidence establishing a genuine issue of material fact concerning the premises owners' actual knowledge of the presence or danger of asbestos in response to the premises owners' properly supported summary judgment motion,[14] we conclude that the Court

of Appeals properly affirmed the trial court's summary judgments granted to Jewish Hospital and Colgate on the issue of duty.

We note that we review the propriety of the summary judgments granted here applying the traditional standard of premises-owner duty to independent contractors spelled out in the *Clary* case. And we do not believe that the advent of comparative negligence since *Clary* was decided demands a change in the law concerning premises-owner duty. Comparative negligence simply allows for proportional reduction in the award rather than barring recovery when both parties are at fault in some manner.[15] But comparative negligence does not, by itself, change the law as to when one owes another a duty that could lead to liability for breaching that duty. Because Brewster presented no evidence establishing the premises owners' actual knowledge of the presence and dangers of asbestos, we conclude that the premises owners were entitled to judgment in their favor as a matter of law.

 Brewster points to evidence that Jewish Hospital conceded the presence of

---

ees. Employees of contractors hired to perform routine repairs or maintenance that the owner or owners of similar businesses would normally be expected to handle with employees generally are viewed as being statutory employees. Whether a project is customized to the premises owner's needs is irrelevant.") (citations omitted).

**12.** *Steelvest, Inc. v. Scansteel Service Ctr., Inc.,* 807 S.W.2d 476, 483 (Ky.1991).

**13.** *Id.* at 482. See also Kentucky Rules of Civil Procedure (CR) 56.03 ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

**14.** Again, the premises owner must have actual knowledge of a hidden danger to have a

duty to warn an independent contractor. *Clary,* 75 S.W.2d at 537.

**15.** *See Hilen v. Hays,* 673 S.W.2d 713, 720 (Ky.1984) (adopting comparative negligence and explaining that "where contributory negligence has previously been a complete defense, it is supplanted by the doctrine of comparative negligence. In such cases[,] contributory negligence will not bar recovery but shall reduce the total amount of the award in the proportion that the claimant's contributory negligence bears to the total negligence that caused the damages. The trier of fact must consider both negligence and causation in arriving at the proportion that negligence and causation attributable to the claimant bears to the total negligence that was a substantial factor in causing the damages.").

asbestos in its buildings. Evidence of the presence of, or even exposure to, a potentially injurious substance or condition, however, is insufficient to overcome a properly supported summary judgment motion showing that no duty was established. Even if we assume solely for the purposes of argument that Brewster was exposed to asbestos while working at Jewish Hospital,[16] his claim would still fail because he did not offer any evidence that Jewish Hospital knew of the presence or danger of asbestos at the time he worked there. Jewish Hospital has admitted to awareness of the presence of asbestos in some of its buildings in the 1980s when it undertook an asbestos abatement study. But this survey occurred long after Brewster worked for an independent contractor to build an addition to Jewish Hospital around 1970. We look at what the premises owner actually knew at the time the independent contractor worked on the premises in determining the duty owed at that time.

Similarly, Brewster offers no evidence that Jewish Hospital had actual knowledge of the dangers of asbestos exposure at the time he worked there. And while Brewster attempts to establish Jewish Hospital's constructive knowledge at that time through various periodicals circulated during that time period, our precedent clearly establishes that actual—rather than constructive—knowledge of a hidden danger is required to establish a duty for a landowner to warn or take steps to protect an independent contractor and its employ-

ees.[17] Given the lack of any evidence that Jewish Hospital had actual knowledge of the presence or dangers of asbestos exposure at the time Brewster worked there, we conclude that the trial court properly granted summary judgment on the issue of duty. Although it is not necessary to reach the issue of the contractor's, Wilhelm's, actual or constructive knowledge of the presence or dangers of asbestos, we also note that no proof regarding Wilhelm's knowledge was offered by Brewster or Jewish Hospital.

■ We also conclude that the Court of Appeals properly affirmed the summary judgment granted in favor of Colgate. Unlike the proof regarding Jewish Hospital, Colgate had actually specified the use of asbestos-containing materials in its building expansions in the 1930s through the 1950s, which would seemingly establish at least an issue of fact regarding Colgate's actual knowledge of the presence of asbestos in its buildings. But Brewster has failed to bring to our attention evidence showing that Colgate had actual knowledge of the danger of asbestos at the time he worked there. While we took note of deposition testimony showing that Colgate's own employees used respirators when dealing with asbestos starting in the late 1970s or early 1980s, we found no proof in this record establishing that such protective measures were taken for Colgate's employees during the same time Brewster worked on the plant, which ended in 1976.

16. We express no opinion on the issue of exposure. In the absence of duty, there can be no liability for negligence even if injurious exposure is demonstrated. *Sparks v. Re/Max Allstar Realty, Inc.,* 55 S.W.3d 343, 348 n. 15 (Ky.App.2000). ("Actionable negligence consists of: (1) a duty; (2) a breach of that duty; and (3) consequent injury. The absence of any one of the three elements is fatal to the claim.").

17. *Clary,* 75 S.W.2d at 537 ("But if the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor, and if he does not do this he is liable for resultant injury.") (emphasis added).

Brewster has failed to point to any specific evidence that Colgate was actually aware of the dangers of asbestos exposure at the time he worked there. And no evidence suggesting such awareness has come to our attention during our review of this case. Again, despite Brewster's attempts to argue constructive knowledge through various periodicals in general circulation at the time he worked at Colgate, the premises owner must have actual—not just constructive—knowledge for a duty to warn to arise under Kentucky law. And a Colgate representative testified by deposition to Colgate's relying on its contractors to have knowledge of the various materials present on the site and to take necessary precautions to protect their employees. Brewster offered no proof to show that his employer, Dahlem, did not have such knowledge. Given (1) the lack of evidence that Colgate had actual knowledge of the danger of asbestos exposure during the relevant time period and (2) the lack of evidence that Dahlem did not have actual or constructive knowledge of the danger of asbestos exposure during the relevant time period, we conclude that the trial court properly granted summary judgment on the issue of Colgate's duty.

Because Brewster failed to offer evidence that either premises owner had actual knowledge of the dangers of asbestos at the time he worked on their premises, the Court of Appeals properly affirmed the summary judgments rendered in their favor on this ground.

## B. *Superior Knowledge Not Correct Test.*

While other jurisdictions may use a test where the premises owner's duty to warn depends on its having knowledge of a risk superior to that of its contractor, we believe this comparative approach would yield more confusion and factual disputes.[18] We find our traditional approach, which demands that the premises owner have actual knowledge of the danger and the contractor have neither actual nor constructive knowledge of the danger for the premises owner's duty to warn to arise, is still the most straightforward and fair approach. So we find no reason to abandon our traditional approach in favor of a superior knowledge approach.

## C. *We Decline to Extend Burden–Shifting Approach.*

Brewster argues that he was a business invitee to Jewish Hospital's and Colgate's premises and, as such, the burden-shifting approach adopted in Lanier should apply to him. While we recognize that some confusion may have resulted when we began our discussion by generally referring to customers as "business invitees"[19] in *Lanier,* we note that our holding there concerned shifting the burden from a "customer" to a business owner since we chose to "impose a rebuttable presumption that shifts the burden of proving the absence of negligence, *i.e.,* the exercise of reasonable care, to the party who invited

18. Although we do not resolve this case under the superior knowledge test, we note that apparently no evidence was presented about the contractors' actual or constructive knowledge. So we do not see how the contractors' knowledge could have been meaningfully compared to the premises owners' knowledge on the evidence presented to the trial court before the two summary judgments were issued.

19. *See Lanier,* 99 S.W.3d 431, 432–33 (Ky. 2003) (stating that " '[s]lip and fall' cases are traditionally based on the duty of care that a possessor of land owes to an invitee," and explaining general rules of duties to business invitees before explaining that "[t]hese general principles relate only to the duty owed by a business proprietor to his customers and not to the burden of proof as to whether that duty has been violated.").

the injured customer to its business premises."[20]

We find no reason to extend *Lanier* to the context of the case at hand; and, in fact, we explicitly limit *Lanier* to cases involving customers or clients or patrons suffering "slip and falls" or other injuries resulting from dangerous conditions on a business owner's premises. And we note that other Kentucky reported cases following *Lanier* have also involved customers' slip-and-fall cases,[21] not injuries to other types of business invitees, such as independent contractors' employees.

In cases like the case at hand, independent contractors' employees (unlike retail customers) will generally have another available remedy through workers compensation; and someone other than the premises owner—their employer, the independent contractor—owes them a duty to look after their safety. So we see no reason to extend the burden-shifting approach established in *Lanier* for customers' slip-and-fall claims to encompass the present context. Although, in some unfortunate situations, such as here, the worker might be unable to obtain workers' compensation benefits because of the running of the statute of limitations, we think that this issue might better be addressed through appropriate legislative action on limitations than through our court's extending a burden-shifting approach that might penalize premises owners who reasonably relied on their independent contractors' knowledge and duty to provide a safe workplace for their own employees. So we decline to extend *Lanier* to the present context.

## IV. CONCLUSION.

For the foregoing reasons, we affirm the opinion of the Court of Appeals.

MINTON, C.J.; CUNNINGHAM, NOBLE, SCHRODER, SCOTT, and VENTERS, JJ., sitting. CUNNINGHAM, NOBLE, and SCHRODER, JJ., concur. VENTERS, J., dissents by separate opinion in which SCOTT, J., joins. ABRAMSON, J., not sitting.

Dissenting Opinion by Justice VENTERS.

Although I am in complete agreement with the majority opinion insofar as it reaffirms the applicability of *Owens v. Clary*[1] and rejects the extension of the *Lanier*[2] approach, I dissent because, in my view, the Appellees should not have been granted summary judgment. As then Judge McAnulty pointed out in his dissent to the Court of Appeals opinion in this case:

> A party does not have to meet their burden of proof in order to survive a motion for summary judgment. Summary judgment is not a substitute for trial nor is it the functional or equivalent of a motion for directed verdict. *Steelvest, Inc. v. Scansteel Service Center*, 807 S.W.2d 476, 480 (Ky.1991). The proper function of summary judgment is

---

**20.** *Id.* at 437 (emphasis added).

**21.** *See, e.g., Bartley v. Educational Training Systems, Inc.*, 134 S.W.3d 612 (Ky.2004) (student injured from tripping on carpet remnant at real estate training school); *Martin v. Mekanhart Corp.*, 113 S.W.3d 95 (Ky.2003) (restaurant patron injured from fall on oily spot in restaurant parking lot). We are unaware of any Kentucky cases that have extended *Lanier*'s holding to non-customer business invitees such as independent contractors' employees involved in construction projects on the premises.

**1.** 256 Ky. 44, 75 S.W.2d 536 (1934)

**2.** *Lanier v. Wal–Mart Stores, Inc.*, 99 S.W.3d 431 (Ky.2003)

 

to terminate litigation when as a matter of law it appears that it would be "impossible" for the respondent to produce evidence at trial warranting judgment in his favor.

Under traditional premises liability law, even without the benefit of a *Lanier* burden-shifting approach, Appellant established the existence of a genuine issue with respect to each fact material to his claim. He demonstrated his ability to produce evidence to establish that he had been exposed to a hazardous condition—asbestos containing material—while on the Appellees' premises. He demonstrated the existence of evidence from which one could reasonably conclude that the Appellees were aware of the presence of asbestos containing material in the premises and that they knew, or by the exercise of ordinary care, should have known of that presence. He could offer evidence that they could have known of the materials hazardous quality. He could offer evidence that he had not been warned of the existence of the hazardous condition, and that he suffered damages as a result. There may have been weaknesses in his case but, on the motion for summary judgment, the burden was on the Appellees to establish the non-existence of any genuine issue of material fact. *Roberts v. Davis,* 422 S.W.2d 890 (Ky.1968). Any factual inferences to be drawn from a conflict or ambiguity in the evidence must be drawn to the advantage of the nonmoving party. *Fischer v. Jeffries,* 697 S.W.2d 159 (Ky.App. 1985).

In my view, the Appellees' motion for summary judgment did not meet the *Steelvest* standard because it did not negate the realistic possibility that the Appellant could produce at trial, evidence sufficient to meet his burden of proof. The sum-

mary judgment should be vacated, and the case remanded for trial in the circuit court.

SCOTT, J. joins this dissenting opinion.