Elizabeth MARTIN, Appellant/Cross–
Appellee,

v.

MEKANHART CORPORATION, d/b/a
Frisch's of Somerset; and Frisch's
Restaurants, Inc., Appellees/Cross–Ap-
pellants.

No. 2000–SC–0227–DG,
2000–SC–0749–DG.

Supreme Court of Kentucky.

Aug. 21, 2003.

Rickey D. Bailey, R. Scott Madden, Manchester, Counsel for Appellant/Cross–Appellee.

John T. Pruitt, Jr., Jeffrey Scott Lawless, Travis, Pruitt & Lawless, Somerset, Counsel for Appellees/Cross–Appellants.

COOPER, Justice.

On May 26, 1995, Elizabeth Martin, then 62 years old, slipped and fell in the parking lot of Frisch's Restaurant in Somerset, Kentucky. The restaurant and the parking lot were owned by Appellee Frisch's Restaurants, Inc., and were under the operation and control of Appellee Mekanhart Corporation. Martin brought this civil action in the Pulaski Circuit Court seeking damages for the personal injuries she sustained when she fell. Following a trial by jury, a verdict was returned awarding Martin the following damages:

$12,800.05 - medical expenses incurred to date
10,000.00 - pain and suffering
18,750.00 - lost wages
37,500.00 - permanent impairment

$79,050.05 - total.

Judgment was entered accordingly. Pursuant to a postjudgment motion, the trial judge amended the judgment to allow a credit against the verdict for $5,000.00 previously paid to Martin by Appellees' insurer as partial reimbursement of her medical expenses. Appellees appealed and Martin cross-appealed from the allowance of the $5,000.00 credit.[1] The Court of Appeals vacated the judgment in its entirety, holding that Appellees were entitled to a directed verdict of dismissal. We granted discretionary review and now reverse the Court of Appeals and reinstate the judgment, as amended.

On the evening in question, Martin, accompanied by her sister-in-law, Bronical Howard, proceeded to Frisch's for dinner. There is a sidewalk along the front of the restaurant that leads to the entrance and a number of parking spaces along the front of the restaurant facing the sidewalk. When Martin and Howard arrived at the restaurant at 7:30 p.m., another vehicle was already parked in the parking space closest to the entrance to the restaurant. Martin parked her van in a vacant parking space just to the right of that vehicle. The two women exited the vehicle, walked forward to the sidewalk, turned left, then walked down the sidewalk and into the restaurant.

When Martin and Howard exited the restaurant at 8:50 p.m., the vehicle that had been parked in the space to the left of Martin's vehicle was gone and the space was vacant. Because other restaurant customers were standing on the sidewalk and engaged in conversation, Martin attempted to reach her vehicle by walking down the handicap ramp and across the now-vacant parking space between her vehicle and the restaurant entrance. While attempting to traverse the vacant parking space, she slipped on a slick substance and fell to the asphalt surface of the parking lot, injuring her back, both legs, and her right arm and hand. Two police officers who were inside the restaurant saw her fall and came to her assistance, as did the restaurant's third-shift manager. After

---

1. The credit issue was not addressed in the motion for discretionary review or in the briefs and was not raised at oral argument. Thus, we assume that it has been abandoned.

being helped to her feet, Martin noticed a "large" spot of what appeared to be oil on the surface of the parking space where she had fallen and a smaller spot on top of the larger one that had a "shiny" appearance. The back of Martin's pants was smeared, but not splattered, with oil.[2] Jerry Crawford, a friend of Martin's, visited the restaurant the next morning and discovered oil spots on all of the parking spaces. On the space where Martin fell, Crawford found an "older" oil spot about two feet in diameter with some fresher oil on top of the older spot. Of course, neither Martin nor any of her witnesses knew how long the oil had been on the surface of the parking space, or whether it had leaked from the vehicle that was parked there when she and Howard arrived at the restaurant, or from a vehicle that had previously parked there earlier that day, or, for that matter, another day.

Larry Thrasher, an employee of Mekanhart and the executive manager of the restaurant, testified that it was common for oil to drip from parked vehicles onto the surface of the parking spaces and that, "for safety reasons," the spaces were scrubbed and hosed on a weekly basis and steam-cleaned twice per year, once in the spring and again in the fall. A professional sweeping service swept the parking lot and that of the adjacent shopping center every two weeks. Mekanhart also kept an oil absorbent material on hand that its employees used to spread on the oil spots to soak up the liquid. Thrasher could not say, however, when the parking lot was last scrubbed, hosed, steam-cleaned, or professionally swept before Martin's fall or the last time any oil absorbent had been applied to the parking lot. Labrenda Joan Marcum, who worked in the shopping center adjacent to the restaurant, testified that, after Martin filed suit, she saw Thrasher and another employee scrubbing the parking spaces in front of the restaurant and that such was the first occasion on which she had ever observed anyone doing so. No absorbent material was found in the oil smear on Martin's clothing.

Thrasher also testified that each shift manager had a checklist of duties to perform during his or her shift. According to the checklist, the parking lot was to be inspected four times per day at 6:00 a.m., 8:00 a.m., 2:00 p.m., and 4:00 p.m. However, the checklist only required the shift manager to check for "anything unusual, litter, bottles, etc.," to "pick up big items on lot" and to "clean all outside areas." It did not specifically mention scrubbing, hosing, or applying absorbent to oil spots. Thrasher did not know how long the oil spot on which Martin slipped had been there, and no other employees who were on duty when Martin fell were called upon to testify.

The Court of Appeals vacated the judgment on the authority of *Cumberland College v. Gaines*, Ky., 432 S.W.2d 650 (1968), and other cases that placed the burden of proof on an injured business invitee to prove not only that he or she was injured by an encounter with a foreign substance or other dangerous condition on the business premises, but also that either (1) the substance or dangerous condition was caused to be there by the actions of the proprietor or the proprietor's employees, or (2) the substance or dangerous condition had been present for a sufficient length of time before the accident that it should have been discovered and removed or adequate warning given of its presence

---

**2.** The pants were marked as an exhibit but are not found in the record. The "smeared but not splattered" description was given by Martin's attorney without objection during closing argument while displaying the pants to the jury.

by the proprietor or the proprietor's employees. *Id.* at 652.

■ However, subsequent to the Court of Appeals' decision in this case, we rendered our decision in *Lanier v. Wal–Mart Stores, Inc.*, Ky. 99 S.W.3d 431 (2003), which overruled *Cumberland College v. Gaines* and other like cases and adopted a burden-shifting approach to premises liability cases involving injuries to business invitees. *Id.* at 436. Under *Lanier,* the customer retains the burden of proving that: (1) he or she had an encounter with a foreign substance or other dangerous condition on the business premises; (2) the encounter was a substantial factor in causing the accident and the customer's injuries; and (3) by reason of the presence of the substance or condition, the business premises were not in a reasonably safe condition for the use of business invitees. *Id.* at 435–36. Such proof creates a rebuttable presumption sufficient to avoid a summary judgment or directed verdict, *id.* at 435, and "shifts the burden of proving the absence of negligence, *i.e.,* the exercise of reasonable care, to the party who invited the injured customer to its business premises." *Id.* at 437. Martin's evidence was sufficient to avoid a directed verdict of dismissal under *Lanier.*

In fact, Martin's evidence would have sufficed to avoid a directed verdict even under the regime of *Cumberland College v. Gaines.* Thrasher admitted knowing that oil dripped from his customers' parked vehicles onto the asphalt surface of the parking spaces and that, "for safety reasons," the oil needed to be removed or treated with an absorbent. The parking space where Martin fell was the space closest to the restaurant's entrance, thus, the space most visible to Mekanhart's employees. If two police officers seated inside the restaurant were able to observe Martin's accident, a jury could believe that

Mekanhart's employees should have observed and remedied the oil spot before the accident. When Jerry Crawford inspected the parking lot the next morning, he found "old" oil spots in all of the parking spaces and that the oil spot in question still had not been removed or treated. Labrenda Joan Marcum's testimony inferred that Mekanhart's employees seldom, if ever, scrubbed and hosed the parking lot. As Martin's attorney argued without objection, the fact that the oil on Martin's pants was smeared but not splattered created at least an inference that the spill was not "new." Even under the daunting burden-of-proof requirements imposed by *Gaines, supra,* this evidence sufficed to create a reasonable inference that Mekanhart's employees did not regularly seek out and remedy a recognized danger created by oil leaking onto the surface of the parking lot and that the spot that caused Martin to slip and fall had been present for a sufficient length of time to have been discovered and remedied. *Smith v. Wal–Mart Stores, Inc.*, Ky., 6 S.W.3d 829, 831 (1999).

Appellees raise other issues in their brief that were argued on their initial appeal but were neither decided by the Court of Appeals nor preserved by a cross-motion for discretionary review. *Commonwealth Transp. Cabinet, Dep't of Highways v. Taub*, Ky., 766 S.W.2d 49, 51–52 (1988). Nevertheless, as noted *infra,* the issues are without merit.

■ The trial judge was not required to hold a *Daubert* hearing, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–95, 113 S.Ct. 2786, 2796–97, 125 L.Ed.2d 469 (1993), before permitting Dr. Patel to express his opinion during his videotaped deposition that Martin had suffered an 8% total body impairment as a result of the accident. Appellee raised this objection for the first time when Dr.

Patel's deposition was offered at trial, not ten days prior to trial as required by CR 30.02(4)(e). Further, the basis of Appellees' complaint is that Martin did not establish that Dr. Patel's opinion was scientifically reliable. However, it has long been held in this jurisdiction that an expert medical witness can express an opinion as to the degree of impairment suffered by a patient. *E.g., Carney v. Scott,* Ky., 325 S.W.2d 343, 348 (1959) (error to "exclude[ ] the testimony of Dr. Corum and Dr. Salmon to the effect that plaintiff had a 75% permanent disability"); *Horn's Adm'r v. Prudential Ins. Co. of Am.,* 252 Ky. 137, 65 S.W.2d 1017, 1020 (1933) (physician may express expert opinion as to degree of patient's disability). Dr. Patel was a licensed physician and a treating physician of Martin. His expertise was not challenged. Thus, Martin was not required to prove that his opinion as to her degree of impairment was scientifically reliable. Rather, the burden was on Appellees to prove otherwise. *Johnson v. Commonwealth,* Ky., 12 S.W.3d 258, 260–64 (1999). No such proof was proffered and the issue was not raised during the cross-examination of Dr. Patel.

■ Nor is a new trial required because the same jurors did not sign each separate verdict for each item of damages awarded. (Actually, the issue pertains only to the $10,000.00 verdict for pain and suffering since the same jurors did sign all of the other verdicts that awarded damages.) In fact, the same nine jurors did agree to every verdict that awarded damages. The fact that other jurors signed some but less than all of these verdicts is immaterial. *See also Young v. J.B. Hunt Transp., Inc.,* Ky., 781 S.W.2d 503, 505 (1989) (each special interrogatory submitted to the jury should be treated as a "separate verdict which may be reached by any nine or more members of the panel").

Accordingly, we reverse the Court of Appeals and reinstate the judgment of the Pulaski Circuit Court, as amended.

LAMBERT, C.J.; GRAVES, STUMBO, and WINTERSHEIMER, JJ., concur.

KELLER, J., concurs by separate opinion in which JOHNSTONE, J., joins.

KELLER, Justice, concurring.

I concur in the result reached by the majority because Martin's evidence created a jury issue under the law as it existed before this Court decided *Lanier v. Wal–Mart Stores, Inc.*[1] I dissented in *Lanier* because the majority's decision to invert the burden of proof in slip-and-fall cases "not only conflicts with basic principles of negligence law, but also with the common law principle that a proprietor is not an insurer for a customer's safety."[2] My position in this regard has not changed, and I thus disagree with the *Lanier* analysis in today's majority opinion. However, because our pre-*Lanier* precedent also compels the conclusion that the trial court properly submitted the case to the jury,[3] I concur in result only.

JOHNSTONE, J., joins this concurring opinion.

---

1. Ky., 99 S.W.3d 431 (2003).

2. *Id.* at 438 (Johnstone, J., dissenting).

3. *See Smith v. Wal–Mart Stores, Inc.,* Ky., 6 S.W.3d 829, 831 (1999).