RENDERED: MAY 28, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0542-MR

VERONICA MILLER AND MARVIN                                    APPELLANTS
MILLER

v.          APPEAL FROM FAYETTE CIRCUIT COURT
            HONORABLE KIMBERLY N. BUNNELL, JUDGE
            ACTION NO. 14-CI-03271

FAYETTE MALL SPE, LLC; ERMC II,                                APPELLEES
LP; AND CBL & ASSOCIATES
MANAGEMENT, INC.

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND L. THOMPSON, JUDGES.

CALDWELL, JUDGE:  Veronica and Marvin Miller appeal from the Fayette

Circuit Court's grant of summary judgment in favor of the Appellees.  For the

reasons stated herein, we reverse and remand.

**RELEVANT FACTS AND PROCEDURAL HISTORY**

On August 30, 2013, Veronica and Marvin Miller went shopping in Fayette Mall. When the Millers walked in an area near a Sephora store and a Dead Sea kiosk, Veronica slipped and fell and allegedly suffered injuries from her fall. In August 2014, the Millers filed a personal injury suit against the Fayette Mall premises owner and the entities providing management, security, and housekeeping services to the mall. After the parties engaged in some discovery, the Appellees filed a motion for summary judgment in March 2016.

The Appellees attached to their summary judgment motion a surveillance video from the Sephora store entrance near the Dead Sea kiosk. Unfortunately, the surveillance video in the record on appeal (a CD/DVD attached to the defendants' summary judgment motion) was not in a format allowing us to view the video even after consultation with court technology services. However, it appears undisputed that the video contains footage of Ms. Miller's fall and of an unidentified male patron bending over and picking up an object from the floor just under a minute before the fall. Based on our review of discussions of the video in court hearings and deposition testimony as well as still photographs in the record from the video, apparently the view of the object is obstructed so that it cannot be identified solely by watching the video.

The Appellees also attached the Millers' deposition testimony and an affidavit from Nir Neve to their motion. Nir Neve had been working at the Dead Sea kiosk when Ms. Miller fell. In his affidavit, Neve averred that he remembered seeing an unidentified male patron "drop a bottle of water" between the Sephora entrance and the Dead Sea kiosk. And he further averred that he "noticed the man immediately pick up the bottle and what I believe was the cap to the bottle." He "did not notice whether water spilled from the bottle" since he was busy working, but he recalled that "several customers continued to walk in the general area between Sephora's customer entrance and the Dead Sea kiosk."

Neve also averred that Ms. Miller slipped and fell in the same general area where the patron had dropped the bottle less than a minute earlier and that there was no time to clean up or warn anyone before her fall:

> 6. Less than one (1) minute later, a woman walked in the same direction as the male patron through the same area of the dropped bottle of water. The woman slipped and fell in the water which I can only believe was just spilled and splattered from the bottle dropped by the male patron.
>
> 7. Since the woman slipped and fell within seconds of the spill, there was not enough time for anyone to clean the spill or warn the woman of its existence prior to the woman's slip and fall.
>
> 8. After the woman slipped and fell, I helped her up and a co-worker at the Dead Sea kiosk cleaned up the water.

(Record (R.), p. 119).

In response to the motion for summary judgment, the Millers contended that genuine issues of material fact remained and that the Appellees were not entitled to judgment as a matter of law. They asserted that it was impossible to see what was actually dropped by the patron in the video, that the surveillance recording did not actually show a spill, and that it was unknown when the floor became wet—especially as they had requested surveillance video starting three hours beforehand but were only provided with footage starting a few minutes before the fall. The Millers pointed to lack of definitive proof that mall security officials had recently inspected the area.[1] They argued that the Appellees cherry-picked footage showing the patron bending over and picking something up to cast blame on a patron for a spill and shift blame from themselves for inadequate efforts to make sure the premises were safe for mall patrons. The Millers further asserted that the video showed Ms. Miller falling in a spot several feet away from where the patron had bent over to pick something up.

---

[1] Although an incident report and a mall official's deposition testimony both stated that a mall security officer had been in the area about ten minutes before Ms. Miller's fall and did not notice anything on the floor, that security officer admitted in his deposition that he was unsure whether he had passed through the area ten minutes beforehand since he had just been patrolling outside in his vehicle. Also, he did not remember whether he passed the Sephora/Dead Sea kiosk area or went a different way when going inside to the mall security office. The mall produced no Daily Activity Reports for the relevant period which perhaps could have shown when security had passed through the area for inspection despite any general practices of keeping such reports.

At the beginning of the hearing, the trial judge stated that there were clearly factual disputes. She noted Neve's affidavit testimony about seeing someone drop a water bottle and described the video as showing that someone dropped something. But she acknowledged that there was an issue about whether the item was even dropped in the same area where Ms. Miller fell and that the Millers did not concede that the dropped item (maybe a water bottle) was the cause of the wet surface. The trial judge also acknowledged some apparent internal inconsistencies in the affidavit about the extent to which Neve was watching the patron versus conducting business.

The Millers' counsel pointed out that portions of Neve's affidavit were inconsistent with what was shown on the video. For example, she described the video as showing Neve having his back turned to the unidentified male patron when the patron walked through the area and dropped an object, despite Neve's statement in the affidavit that he saw the patron drop the object. She made clear the Millers did not concede that any spill by this patron, if there even was a spill at all, was the cause of the wet surface which led to the fall. Among other things, she pointed out that the patron had bent down to pick up an item closer to Sephora, while Ms. Miller fell closer to the Dead Sea kiosk while passing in the opposite direction, and that the video showed customers in the same path as the unidentified patron passing through without incident.

The trial court ultimately concluded it would be premature to rule on the motion on the present record and indicated that additional discovery should occur, such as taking Neve's deposition. The trial judge discussed how it was not her role to determine what the dropped object was in the video but suggested that deposition testimony by Neve might offer more definitive proof. While the trial judge acknowledged the difficulty a business would face in taking corrective action within a minute of a spill, she noted there was a dispute about whether the wet surface was caused by the object dropped less than a minute beforehand by the unidentified patron. The trial court's written order denied summary judgment based on a finding of the existence of genuine issues of material fact.

Following further discovery, the Appellees filed a renewed summary judgment motion a few years later. Attached to the renewed summary judgment motion was Neve's deposition transcript. In his deposition, Neve testified that he saw the patron pick up a "bottle of water or a cup," but he admitted that he did not know if the bottle or cup had water in it and that he did not see anything spill from the bottle or cup, nor did he see water on the floor at that time. Since he was not aware of water on the floor prior to Ms. Miller's fall, he did not call security to report a spill. But he testified that when he went to help Ms. Miller immediately after her fall, he saw water on the floor which a co-worker cleaned up before security arrived.

At the hearing on the renewed summary judgment motion, the trial judge discussed her initial impressions of what she thought the surveillance recording showed when she viewed it a few years back—basically that it showed a man dropping something and then Ms. Miller falling nearby just a minute later. But she explained she had denied the earlier summary judgment motion, thinking it was premature and that the plaintiffs should be allowed to develop their case.

Having now reviewed Neve's deposition testimony as well as watching the video several times, she concluded Neve's testimony "bolstered" what she had already seen on the recording. She also noted that there was no evidence presented of another source for the water on the floor. She expressed a belief that the Millers' arguments about mall officials failing to comply with their stated protocols for patrolling the mall were irrelevant. Instead, since there was only a minute between the mall patron dropping something and Ms. Miller's fall, and there was no evidence of another source of the water on the floor, the trial judge concluded that there had been no notice to the defendants of the spill and that there was no evidence of negligence or failure to exercise reasonable care. So, she determined that summary judgment in favor of the Appellees was warranted.

The trial court's written order granted summary judgment based on its finding that the Appellees did not have a sufficient time to take steps to address a spill and its conclusion that there were no genuine issues of material fact:

> Defendants did not have a sufficient time to become aware or warn of the subject spill. The testimony of Nir Neve as well as the video footage is uncontroverted that the subject spill led to the Plaintiff's fall and that such spill occurred less than one minute before the fall. As a result, there are no genuine issues of material fact.

(R., p. 784). (The order entered appears to be one tendered by counsel).

The Millers filed a motion for reconsideration and to vacate summary judgment. They argued that legitimate factual disputes remained about the Appellees' "theory" that a customer dropped a bottle of water, water spilled, and this water was the cause of Veronica Miller's fall a minute later. They asserted the surveillance recording did not actually show a bottle being dropped on the floor. They pointed to Neve's admission in his deposition that he did not know if there had been water in the bottle/cup and did not see water on the ground prior to the fall. They argued that the trial court had engaged in speculation to conclude that the patron's dropping an object was the cause of the water on the floor leading to Ms. Miller's fall. The trial court denied the motion, and the Millers filed a timely appeal.

## STANDARD OF REVIEW

We review the trial court's grant of summary judgment under the non-deferential *de novo* standard, as the Kentucky Supreme Court has explained: "Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists. So we operate

-8-

under a de novo standard of review with no need to defer to the trial court's decision." *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky. 2013) (footnotes omitted).

## ANALYSIS

I.    *The Trial Court Misconstrued or Misapplied Kentucky Authority Regarding the Burden of Proof in Slip and Fall Premises Liability Cases*

The trial court's discussion at the renewed summary judgment motion hearing and the text of its written order indicate that it granted summary judgment based on a lack of showing of sufficient notice for the Appellees to correct or at least warn customers of the unsafe condition. The lack of other evidence indicating an alternative source of the water on the floor was mentioned by the trial court at the hearing, although this was not explicitly noted in the written order.

To the extent that the trial court assumed that the Millers had the burden of proving that the substance was on the floor long enough for the Appellees to take corrective action, this was in error. *Lanier v. Wal-Mart Stores, Inc.*, 99 S.W.3d 431, 436 (Ky. 2003) ("we now depart from our previous approach imposing the burden on the injured customer to prove how the foreign substance came to be on the floor and/or how long it had been there . . . ."). Nearly two decades ago, the Kentucky Supreme Court overruled prior case law requiring that customers must prove that either the premises owner (or its employees) caused the foreign substance on the floor or that the substance was on the floor long enough

for the owner to take corrective action to prevail on a premises liability action for personal injuries. *See id.* at 433-36.

Instead, under our current law, once a customer/business invitee offers proof that a foreign substance was on the floor of the premises and was a substantial factor in causing him or her to fall and suffer resulting injuries, that is sufficient to withstand a premises owner defendant's motion for summary judgment in this type of slip and fall case:[2]

> the customer retains the burden of proving that: (1) he or she had an encounter with a foreign substance or other dangerous condition on the business premises; (2) the encounter was a substantial factor in causing the accident and the customer's injuries; and (3) by reason of the presence of the substance or condition, the business premises were not in a reasonably safe condition for the use of business invitees. Such proof creates a rebuttable presumption sufficient to avoid a summary judgment or directed verdict, and shifts the burden of proving the absence of negligence, *i.e.*, the exercise of reasonable care, to the party who invited the injured customer to its business premises.

*Martin v. Mekanhart Corp.*, 113 S.W.3d 95, 98 (Ky. 2003) (internal quotation marks and citations omitted) (citing *Lanier*, 99 S.W.3d at 435-37).

In the present case, there is proof sufficient to create at least issues of fact about the presence of a foreign substance on the floor and the wet surface

---

[2] From our review of the record, there were apparently no allegations in this case that the unsafe condition (the wet floor) was open and obvious.

-10-

causing Ms. Miller to fall and sustain injuries as a result and thus the premises not being in reasonably safe condition. Consequently, a rebuttable presumption in the Millers' favor arose which is sufficient to withstand the Appellees' summary judgment motion under binding Kentucky precedent. *Id.*

II. *The Trial Court Erred in Concluding No Genuine Issues of Material Fact Remain*

In addition to the error in apparently assuming that the Millers bore the burden of proving how long the substance was on the floor to prevail on their claim, we conclude that the trial court erred in concluding that no genuine issues of material fact remain.

In Kentucky, "summary judgment is to be cautiously applied and should not be used as a substitute for trial." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky. 1991). Thus, granting summary judgment is only proper "when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Id.* at 483. In deciding whether to grant summary judgment, the trial court must view the factual record in a light most favorable to the non-moving party and resolve all doubts in his/her favor. *Id.* at 480. The movant bears the initial burden of convincing the trial court by evidence of record that no genuine issue of material fact is in dispute, but then the burden shifts to the party opposing summary judgment to present at least some affirmative evidence

-11-

showing there is a genuine issue of material fact for trial. *Id*. at 482. "The trial judge must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists." *Id.* at 480.

Given the binding precedent about premises liability cited herein and the trial court's duty to view the evidence of record in the light most favorable to the non-moving party, the trial court erred in determining that no genuine issues of material fact remained on the record before it. The record reveals that the Appellees came forward with evidence indicating that an unidentified patron had dropped an object within several feet of where Ms. Miller fell less than a minute later. Although the Appellees have characterized the video and testimony as showing a "spill" from a water bottle dropped by a patron in the same area where Ms. Miller fell just a minute later, the trial court noted existing factual disputes about whether such a spill occurred when denying the initial summary judgment motion even after reviewing the surveillance video and Neve's affidavit.

Upon filing the renewed motion for summary judgment, the Appellees attached Neve's deposition testimony. The trial judge orally found that this "bolstered" the video and the Appellees' theory of what had occurred (*i.e.*, that the dropped object was the cause of a spill causing Ms. Miller's fall on wet surface). And the written order granting summary judgment contained a finding that the

-12-

evidence incontrovertibly showed that a patron dropped a water bottle causing a spill leading to the fall.

Reviewing the trial court's grant of summary judgment under the applicable *de novo* standard, we conclude that it must be reversed. A jury or judge presiding in a bench trial may make reasonable inferences based on the evidence and, therefore, they may or may not find that the patron's dropping an item a minute beforehand was the cause of the wet surface. *See generally Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 287 (Ky. 2014) ("A jury is entitled to draw all reasonable inferences from the evidence . . ."); *Kubajak v. Lexington-Fayette County Urban County Government*, 180 S.W.3d 454, 459 (Ky. 2005) (administrative law judge, as the fact-finder in workers' compensation cases, is charged with weighing the evidence and with making reasonable inferences from the evidence). However, a trial judge considering a summary judgment motion must not weigh the evidence or decide any issues of fact. *Steelvest*, 807 S.W.2d at 480; *Welch v. American Publishing Co. of Kentucky*, 3 S.W.3d 724, 730 (Ky. 1999).

The trial court denied the initial summary judgment motion, finding factual disputes after reviewing evidence including the surveillance recording and Neve's affidavit. And the trial court granted the renewed summary judgment motion, essentially concluding that no genuine issues of material fact remained

after reviewing Neve's deposition testimony and orally noting the lack of evidence of another source of the water on the floor. But viewing the evidence in the light most favorable to the Millers and resolving all doubts in their favor, Neve's deposition testimony did not directly and conclusively state that the patron spilled water or that such a spill caused the fall, nor did it preclude the existence of genuine issues of material fact.

Neve testified he did not know whether there was water in the container before it was dropped and that he did not see water spill from the container nor see water on the floor prior to Ms. Miller's fall. Moreover, other mall patrons walked in the same area around the same time without slipping, and it is not certain that the patron dropped the bottle in the exact area where Ms. Miller fell or whether the bottle was only dropped in that general vicinity.

A reasonable jury or judge hearing a bench trial might make reasonable inferences to conclude that the dropped item was or was not the source of the water on the ground leading to Ms. Miller's fall. *Toler*, 458 S.W.3d at 287. Resolving such a factual dispute would be within the purview of a trial fact-finder but not within the purview of a trial court ruling on a summary judgment motion— particularly not under our strict *Steelvest* standard:

> under the new federal standards, this burden does not
> necessarily require the movant to produce evidence
> showing the absence of a genuine issue of material fact,
> but only that he show that there is an absence of evidence

-14-

possessed by the respondent to support an essential element of his case. Under the present practice of Kentucky courts, the movant must convince the court, by the evidence of record, of the nonexistence of an issue of material fact.

*Steelvest*, 807 S.W.2d at 482.

It appears to us that summary judgment may have been granted here under the federal standard rather than the Kentucky state court standard as the trial court orally noted the Millers' failure to offer evidence of an alternative source of the water to counter the Appellees' evidence indicating a mall patron's dropped item as a potential source of the water.[3] And again, the Millers did not have the burden of proving how or when the water came to be on the floor to defeat the summary judgment motion under precedent such as *Lanier* and *Martin*.

---

[3] Retail customers generally cannot easily access potential sources of evidence about how or when foreign substances on the floor or other unsafe conditions arose on retail premises—in contrast to the premises owners. *See Smith v. Wal-Mart-Stores, Inc.*, 6 S.W.3d 829, 831 (Ky. 1999) (J. Cooper, concurring) ("Presumably, had the customer had personal knowledge of the presence of the substance/object before the accident, he would not have stepped on it. Absent his own knowledge or some other inferential proof, such as the melted Icee in this case, the customer must either produce a witness who saw the substance or object on the floor prior to accident or face either summary judgment or a directed verdict. The unlikelihood of success in that regard is attested to by the cumulative outcomes in the cases cited *supra.* Placing this virtually insurmountable burden of proof on the customer is inconsistent with the proposition that a proprietor of a place of business has a duty to keep his premises in a reasonably safe condition for normal use by his customers."). Due in part to Justice Cooper's expression of concerns in this regard, the Kentucky Supreme Court eventually abandoned its earlier approach and held that retail customers no longer had to prove how long a substance had been on the floor to prevail on a premises liability claim for a slip and fall. *Lanier*, 99 S.W.3d 434-35 (noting retail customer's inability to prove how long substance had been on floor before her fall and Justice Cooper's discussion in his concurring opinion in *Smith*).

-15-

In short, though the Appellees had come forward with evidence which could be considered by a trial fact-finder in determining whether the Appellees had rebutted the presumption in the Millers' favor, the evidence offered did not establish the non-existence of genuine issues of material fact. And viewing the evidence in the light most favorable to the Millers and resolving all doubts in their favor, it would not be impossible for the Millers to prevail at trial—especially as they did not concede or stipulate as to the cause of the wet surface and they did not bear the burden of proving how or when the water came to be on the floor.

As we reverse the trial court's grant of summary judgment on other grounds, we decline to reach the Millers' alternate argument—which they admit was not preserved and which the Appellees point out was not raised in the Millers' pre-hearing statement—that the summary judgment was improperly granted due to there being no previously filed answer by the Appellees in the record. Furthermore, other issues or arguments raised by the parties in their briefs which are not discussed herein have been determined to lack merit or to be unnecessary for our resolution of this case.

## <u>CONCLUSION</u>

For the reasons stated herein, we REVERSE and REMAND for further proceedings in conformity with this Opinion.

ALL CONCUR.

-16-

BRIEFS FOR APPELLANTS:

Kendra L. Rimbert
Louisville, Kentucky

BRIEF FOR APPELLEES:

James G. Womack
Stephanie Tew Campbell
Lexington, Kentucky