NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0424n.06

No. 21-5033

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>DARRELL LITTLETON,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff-Appellant,</td><td>)</td><td>**ON APPEAL** FROM THE</td></tr>
<tr><td></td><td>)</td><td>THE UNITED STATES DISTRICT</td></tr>
<tr><td>v.</td><td>)</td><td>COURT FOR THE EASTERN</td></tr>
<tr><td></td><td>)</td><td>DISTRICT OF KENTUCKY</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>LOWE'S HOME CENTERS, LLC,</td><td>)</td><td>**OPINION**</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendant-Appellee.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

FILED
Sep 07, 2021
DEBORAH S. HUNT, Clerk

**BEFORE: GRIFFIN, LARSEN, and NALBANDIAN, Circuit Judges.**

**NALBANDIAN, Circuit Judge.** Darrell Littleton suffered an injury while shopping for wood at Lowe's. He sued the store, but following discovery, the district court granted summary judgment for Lowe's. Littleton appeals, and we **AFFIRM**.

I.

April 25, 2018 began as a normal day for Darrell Littleton. To make ends meet, Littleton buys, fixes up, and then rents out houses. Naturally, this requires him to purchase a lot of building material and tools. For that reason, Littleton was a frequent visitor of the Lowe's in Morehead, Kentucky. But Littleton's April 25th stop at the store did not go quite like his previous visits. Littleton stopped by Lowe's to purchase some balusters for his mother's house. While standing in the aisle housing the balusters, Littleton realized he needed to run some quick calculations. So he looked down at his phone to plug in some numbers.

Littleton did not see exactly what happened next. But he felt it. When he was looking down at his phone, Littleton says a heavy object hit his head and hand before crashing to the ground. Littleton staggered but did not fall down or lose consciousness. When Littleton collected his senses, he saw two lumber stair stringers on the ground. Similar stringers sat in a display just above the balusters Littleton was planning to buy. This display, which customers can reach, is a metal shelf with dividers separating different lumber products. At the front of the display is a "kickplate," a slim metal plate that keeps objects housed on the shelf from moving. A slim, lax cord also runs across the display, which is designed to prevent products from falling when customers handle them.

Soon a Lowe's employee, Billy Hillard, was on the scene. According to Littleton, Hillard remarked that he had "told them a thousand times" to move the cable running across the stringer display up to a higher position. (R. 90-1, Dep. of Darrell Littleton at 77–78, PID 403–04.) The stringers left an abrasion on Littleton's head and a sharp pain in his right thumb, so a Lowe's employee retrieved a bandage for him. Still, Littleton left the store shortly after the incident without filling out a formal incident report with Lowe's. Instead, he told Sales Manager Larry Routt that a "treated step tread fell [and] hit" him on the top of his head and right hand. (R. 90-2, PID 438.) Littleton later returned to fill out a formal incident report and retrieve an informal report Routt had written.

Littleton's injury led to neck and head problems for which he has sought regular treatment. Littleton says the pain from his injuries prevents him from enjoying time with his grandchildren and wife. So he sued Lowe's in state court for negligence, claiming he was "hit in the head by a piece of lumber which was inappropriately stacked and secured." (R. 1-1, Compl. at 3, PID 8.) His theory is that Lowe's put too many stringers in the display, which caused two of them to tip over.

And when they fell, they flipped over the cord running across their display, creating a "hammering leverage" that made them even more dangerous. (R. 90-1, Dep. of Darrell Littleton at 106, PID 411.) So by failing to properly secure the stair stringers, Lowe's breached its "duty to exercise reasonable care for" Littleton's safety. (R. 1-1, Compl. at 3, PID 8.)

Lowe's removed Littleton's complaint, invoking federal diversity jurisdiction. The parties conducted discovery and took several depositions. Those included Littleton, Hillard, and Routt, as well as Littleton's doctors and medical experts (though Littleton did not retain a liability expert). After discovery, the district court granted Lowe's summary judgment. "There is no evidence in the record," the court wrote, "that the stringer display, in and of itself, posed an unreasonable risk of harm." (R. 112, Mem. Op. & Order at 9, PID 1203.) Instead, Lowe's expert testimony and the "[b]asic rules of physics" render Littleton's account impossible. (*Id.*)

Littleton appeals the district court's grant of summary judgment. But he runs into the same hurdle here that he did below: He has no evidence that the stringer display was unreasonably dangerous. And for that reason, we affirm summary judgment.

## II.

We review a grant of summary judgment de novo. *See, e.g.*, *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When we review a grant of summary judgment, we draw reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But to prevail, the non-moving party "must present material evidence in support of [its] allegations." *Kessler v. Visteon Corp.*, 448 F.3d 326, 329 (6th Cir. 2006) (per curiam). A mere "scintilla" of evidence is not enough. *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 252 (1986). Instead, the non-moving party must present evidence on which the jury could reasonably find in its favor. *Id.*

### III.

This is a case about premises liability, an offshoot of negligence. And here we apply Kentucky law. *See, e.g.*, *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). The negligence elements in Kentucky, as elsewhere, are familiar: duty, breach, injury, and legal causation. *See Wright v. House of Imps., Inc.*, 381 S.W.3d 209, 213 (Ky. 2012).

The duty a storeowner owes to someone in his store depends on that person's status. *See Shelton v. Ky. Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 909 (Ky. 2013). "A customer of a store, when on that part of the premises where customers are expected to go, is an invitee." *Dick's Sporting Goods, Inc. v. Webb*, 413 S.W.3d 891, 897 (Ky. 2013) (quoting *Lyle v. Megerle,* 109 S.W.2d 598, 599 (Ky. 1937)). And in Kentucky, "landowners owe a duty to invitees to discover unreasonably dangerous conditions on the land and either correct them or warn of them." *Id.* (quoting *Ky. River Med. Ctr. v. McIntosh*, 319 S.W.3d 385, 388 (Ky. 2010)).

Littleton was an invitee of Lowe's when he was injured. So to survive summary judgment, Littleton must at least show that there is a material dispute over whether the stringer display here was unreasonably dangerous. He fails to do so.

### A.

We start by addressing an important issue: Who bears what burden of proof? Littleton argues we should apply the unique "burden shifting" approach, which the Kentucky Supreme Court has endorsed for slip-and-fall cases. *See Lanier v. Wal-Mart Stores, Inc.*, 99 S.W.3d 431 (Ky. 2003). The district court applied this framework. Lowe's disputes its applicability to falling merchandise cases like this one (even though it prevailed under the framework below). In the end,

it is unnecessary for us to resolve *Lanier*'s exact scope. Even assuming it applies, Lowe's is entitled to summary judgment.

Under *Lanier*, a slip-and-fall plaintiff can thwart summary judgment if he shows three things: (1) he was injured when he fell "as a result of slipping on a substance on the floor," (2) the substance rendered the premises not reasonably safe, and (3) "the presence of the substance . . . was a substantial factor in causing the Plaintiff's fall and injury." *See Smith v. Wal-Mart Stores, Inc.*, 6 S.W.3d 829, 832 (Ky. 1999) (Cooper, J., concurring); *see also Lanier*, 99 S.W.3d at 436 (adopting the *Smith* concurrence). Once a plaintiff meets this burden, a rebuttable presumption arises that the premises were unsafe. *Lanier*, 99 S.W.3d at 437. It then falls on the store to rebut this presumption by presenting evidence that it did not cause the unsafe condition and could not reasonably have discovered it in time to prevent the accident. *See id.*; *Smith*, 6 S.W.3d at 832 (Cooper, J., concurring).

Littleton says this approach should apply here. Lowe's counters that *Lanier* by its terms applies only to slip-and-fall cases. Lowe's is right that the *Lanier* court described its burden-shifting framework by reference to slip-and-fall cases. *See Lanier*, 99 S.W.3d at 432; *see also Smith*, 6 S.W.3d at 832. But the Kentucky Supreme Court has expanded *Lanier* in important ways. For instance, the court no longer requires a slip to occur at a self-service store for a plaintiff to invoke *Lanier*, *see Bartley v. Edu. Training Sys., Inc.*, 134 S.W.3d 612, 616 (Ky. 2004), even though the *Lanier* court's examination of the nature of self-service stores underlaid its reasoning, *see Lanier*, 99 S.W.3d at 435–36. Thus, a customer who tripped over a rug at a real estate school, *Bartley*, 134 S.W3d at 613, and a restaurant-goer who slipped on car oil in a restaurant's parking lot, *Martin v. Mekanhart Corp.*, 113 S.W.3d 95, 98 (Ky. 2003), were entitled to *Lanier* burden-shifting. Moreover, the Kentucky Supreme Court has described *Lanier* with broad language. The

court in *Martin*, for instance, described *Lanier* as applying when a customer has "an encounter with a foreign substance or *other dangerous condition* on the business premises." *Id.* at 98 (emphasis added); *see also Brewster v. Colgate-Palmolive Co.*, 279 S.W.3d 142, 150 (Ky. 2009).

At the same time, no post-*Lanier* Kentucky Supreme Court decision has applied the *Lanier* framework in cases involving something other than trips or slips and falls. Neither has any decision from the Kentucky Court of Appeals. If anything, the court of appeals has scaled back *Lanier*'s reach. *See Brewster v. Colgate-Palmolive Co.*, No. 2004-CA-002681-MR, 2006 Ky. App. Unpub. LEXIS 606, at *10 (Ky. Ct. App. July 14, 2006), *aff'd on other grounds*, *Brewster*, 279 S.W.3d at 149–150 (Ky. 2009) (*Lanier* does not apply to asbestos exposure); *Engler v. Davis*, No. 2005-CA-CA-000669-MR, 2005 WL 3249941, at *1 (Ky. Ct. App. Dec. 2, 2005) (same but with a bookstore stair step); *McNay v. Shell's Seafood Rests., Inc.*, No. 2003-CA-001958-MR, 2005 WL 384547, at *3 (Ky. Ct. App. Feb. 18, 2005) (same but with parking lot curb); *Bryan v. O'Charley's, Inc.*, No. 2002-CA-001503-MR, 2003 WL 21949182, at *3 (Ky. Ct. App. Aug. 15, 2003) (same but with black ice in parking lot). *But see Carrier v. Dairy Queen Wholly Owned Stores, Inc.*, No. 2003–CA–002729–MR, 2005 WL 567190, at *1 (Ky. Ct. App. Mar. 11, 2005) (applying *Lanier* to a black ice case).

So we are left with mixed signals regarding the exact scope of *Lanier*'s burden-shifting framework. The Kentucky Supreme Court's trend has been to expand *Lanier* (though not to falling merchandise cases), while the Kentucky Court of Appeals tends to restrict it. Perhaps this explains the confusion among federal district courts over *Lanier*'s reach. *Compare Woltman v. Pepsi Midamerica Co.*, No. 5:07CV-74-R, 2008 WL 2038880, at *3 (W.D. Ky. May 12, 2008) ("[T]he application of *Lanier* is limited to slip and fall cases brought by business invitees who have been injured as the result of slipping on a foreign substance.") *with Neville v. Wal-Mart Stores E., L.P.*,

No. 3:06–CV–653–H, 2008 WL 2858883, at *4 (W.D. Ky. July 24, 2008) (noting that *Lanier* would apply in a falling merchandise case if plaintiff could prove the dangerous condition was discoverable).

At any rate, we recognize this is a close and unresolved question. But as we discuss below, Littleton is not entitled to *Lanier* burden shifting here even if the framework applies to this type of case because he has not shown the existence of a dangerous condition. *See Martin*, 113 S.W.3d at 98.

B.

Where does all that leave us? To even trigger *Lanier*, Littleton must show that there is a disputed question of material fact on whether Lowe's stringer display was unreasonably dangerous. *See* Fed. R. Civ. P. 56. But he presents no compelling evidence to that effect. Littleton points to two things he says prove the lumber display here was dangerous. Neither gets the job done.

First, Littleton says the wire strung across the display was positioned too low to prevent wood from falling out. But Lowe's presents unrebutted expert testimony that this wire is not designed to prevent merchandise from falling out of the display. (R. 96-1, Aff. of Doug Ginter at 2, PID 495.) Instead, it "serves only to prevent the product from falling to the floor *when the product is being handled*." (*Id.* (emphasis added).) In other words, "[t]he chain/cable has no purpose when the product is not being handled." (*Id.*) So the alleged position of the cable does not create a genuine dispute over the dangerousness of the display.

Second, Littleton accuses Lowe's of "overstocking" the lumber display. But again, Lowe's presents unrebutted testimony that the display was not unreasonably dangerous in this way. Larry Routt testified that a display is "overstocked" when the product cannot fit within the kickplate at

the bottom of the display. (R. 106-6, Dep. of Larry Routt at 31, PID 953.) That kickplate, according to unrebutted expert testimony, "is present to prevent movement of the product . . . and it is an effective tool which prevents movement of" the product. (R. 96-1, Aff. of Doug Ginter at 1, PID 494.) Littleton has produced no evidence that the kickplate was missing when he suffered his injury or that the stringers were outside the kickplate. In fact, Lowe's produced evidence to the contrary.

Littleton next claims the district court drew impermissible inferences in favor of Lowe's. We do not see how. All Littleton can point to is the fact that the district court credited Lowe's expert testimony. But Lowe's expert affidavit is exactly the type of evidence that a party can use to win summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A). And Littleton has not produced evidence to contradict Lowe's expert that the wire across the display does not relate to the display's dangerousness when a customer is not handling the stringers.

Littleton also says he produced "substantial evidence" from which to conclude that the stringers fell because the shelf was overloaded. But he has produced *no* evidence to that effect. The circumstantial evidence Littleton points to here is that a board hit him on the head. That might suffice if stores were strictly liable for their customers' injuries. They are not. *See Lanier*, 99 S.W.3d at 436. At any rate, that a stringer struck Littleton is not evidence that the board fell *because the shelf was overloaded*. Lowe's presented testimony that the shelf was not, and could not have been, overloaded because the stringers were housed within the kickplate. Littleton presented nothing to rebut that.

Littleton's last argument is that a jury should determine whether the display was unreasonably dangerous. But no such categorical rule exists. If a plaintiff comes forward with no evidence of an unreasonably dangerous conditions, but only speculation, the case need not reach a jury. *See Jones v. Abner*, 335 S.W.3d 471, 475–76 (Ky. Ct. App. 2011) (affirming summary

judgment after plaintiff produced no evidence, but only speculation, that bathtub was unreasonably slippery).

IV.

Littleton's task here was admittedly a difficult one. There are no witnesses to this incident. No cameras captured it. Littleton did not even see the stringers fall before he felt their effect. But in the end, this dearth of evidence does Littleton in. We **AFFIRM** the district court's grant of summary judgment.